Ross *v.* Louisville & N. R. Co..

(Division B.    March 1, 1937.)

[172 So. 752.    No. 32511.]

Carl Marshall and Mize, Thompson & Mize, all of Gulf-port, for appellant.

74

**Smith & Johnston**, of Mobile, Ala., for appellee.

Argued orally by **Carl Marshall**, for appellant, and by **Harry H. Smith**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant brought an action in the circuit court of Harrison county against appellee for personal injuries sustained by appellant while an employee of appellee in interstate commerce, and the declaration was framed in the effort to state a cause of action under the Federal Employers' Liability Act, 45 U. S. C. A., section 51, et seq. A demurrer was interposed, which was sustained, and the cause dismissed.

It is well settled that when an action is instituted in a state court under said act, the rules of pleading, practice, and procedure of the state wherein the suit is brought control in so far as thereby no substantive right or defense arising under the act is lessened or destroyed. Thus our statute, section 521, Code 1930, comes into operation, which has enacted that if a declaration "contains sufficient matter of substance for the court to proceed upon the merits of the cause, it shall be sufficient," provided, of course, the matter of substance mentioned in that section is that which is essentially required to be averred and shown under the applicable law, which, in this case, is the said federal act. There was no intention by this statute to change the rule that pleadings are to be taken strongest against the pleader, nor to aid a declaration by mere inferences to be drawn from its averments. Nevertheless, those facts which are reasonably or necessarily implied from the facts stated must on demurrer be considered as true; and when these,

together with the express averments, furnish sufficient matter of substance for the court to proceed upon the merits, and a meritorious case under the applicable law is thus presented, a demurrer is unavailing.

Construing the declaration under the stated rule, we think the third count states a cause of action. The declaration alleges that the railroad company carried as a part of its interstate passenger trains one or more express cars, and that upon arrival of a passenger train at the southern or western terminus of the railroad in the city of New Orleans, the train would be stopped at the passenger station, and the express car or cars would be uncoupled from the passenger coaches, and the express car or cars would thence be drawn by the locomotive across Canal street, and spotted at a point which would leave the rear of the express car immediately beyond and clear of the west or south side of said street; that the express company had in its service a number of large motortrucks and that to accomplish the prompt delivery of articles transported by express, it had for some time been the custom and method pursued that the express trucks would be present at the point immediately west of Canal street when a passenger train arrived; and that while the express car or cars were being spotted at the point aforesaid, the express trucks would, at the same time, be maneuvering for position so that as soon as the express car or cars were spotted the articles of express could be at once loaded into the trucks.

That in order to spot the express car or cars at the place aforesaid it was required by the railroad that the flagman ride on the outside of the rear express car, and on the rear left side thereof, so that as soon as the rear end of said express car had crossed the said street and was in the proper position to be spotted or stopped, the flagman would signal the fireman, who was required to be on the lookout from his cab on the left side of the locomotive for the signal, and when the flagman's signal

was given to the fireman, the latter would communicate it to the engineer. That in order for the flagman to see and to know when the rear end of the express car had reached the precise place when the car was to be stopped or spotted, it was necessary for the flagman to keep his eyes to the rear, or towards the opposite direction from that in which the locomotive and express cars were moving, and, therefore, that the flagman could not at the same time see the positions which the express trucks were occupying or were proceeding to occupy in their said maneuvers to place themselves in ready access to the doors of the express cars when the latter were spotted.

It was further alleged that the method of operation above outlined was an unreasonably dangerous method, in that the flagman in his exposed position was thereby liable to be struck by one of the assembled express trucks in their said maneuvers. That on the occasion in question appellant was the flagman in the employ of appellee, and was performing the duties on the rear outside of an express car in the manner as hereinabove mentioned, and was struck by an express truck in its maneuvers as aforesaid and thrown to the pavement, with the result that appellant suffered severe and permanent injuries. the declaration further averred that appellant had complained to the authorized agents or officers of appellee railroad company about said dangerous method of operation, and had pointed out to them the likelihood of injury to the flagmen by such a method, and that the said authorized agents had promised appellant that the features thereof which produced the said danger would be discontinued, and that appellant relied upon the promise and did not know on the occasion of his injury that the said promise had not been fulfilled.

Although taken from one of our own decisions, the following quotation is a succinct statement of the common law, applicable to actions under the Federal Lia-

bility Act and to the facts of the case here before us: "The general principle is that, where the master has used reasonable care to furnish a reasonably safe place to work, the character of the work considered, and like care to furnish reasonably safe appliances with which to work, the duty rests upon the servant to take care of himself as to all the ordinary and obvious dangers which arise in the progress of the work. Brown v. Corley [168 Miss. 778], 152 So. 61. The converse is equally true that, where the master places his servant at a place and in a character of work which exposes the servant to hazards against which the servant cannot, by the use of due care, protect himself and at the same time do his work, the master must then take reasonable care to warn the servant or to erect guards, if either of these are reasonably practicable, and, if not, the master must so order and control the method of work as to obviate the danger, so far as reasonably practicable." McLemore & McArthur v. Rogers, 169 Miss. 650, 657, 658, 152 So. 883. 884, citing other cases.

The principal argument of appellee, as we construe it, is that it is not alleged that the railroad company had any control over the express company or over its express trucks or over the manner by which these trucks should be handled or maneuvered, and that the express company alone is liable, if there be any liability. We may concede for the sake of the discussion that the railroad company had no control over the trucks of the express company, nevertheless the railroad did have control over its own locomotives and employes and could have refused to operate its locomotives in pulling the express cars into this hazardous situation unless and until the express company desisted from the dangerous method of operation mentioned. In point upon this question is the case Kanawha & M. Railroad Co. v. Kerse, 239 U. S. 576, 36 S. Ct. 174, 60 L. Ed. 448, where a brewing company owning a private switch had placed some pieces

of timber across the switch track in such a position as to strike a brakeman whose duties required him to be on top of a box car, and who was unaware of the presence and position of the said 'pieces of timber, and whose attention at the moment was directed towards the conductor, thus causing him to fail to see the pieces of timber placed as aforesaid. The evidence disclosed that the railroad company knew of the danger, and while it did not erect the dangerous obstructions, nor own the switch track, it was held a question for the jury upon the reason, obviously as already stated, that the railroad company could have refused to put its train into this switch unless and until the obstruction, and the danger thereby created, was removed or remedied.

Something is also said about the action of the express company and its truck or trucks as being an independent intervening cause; but "the rule is that, if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury." Russell v. Williams, 168 Miss. 181, 193, 150 So. 528, 151 So. 372, 373. But more properly, what we have here, under the allegations of the declaration, is a case of concurrent negligence, as to which each of the concurring tort feasors is liable. The allegations of the declaration are that the injury by the express truck was the result of a method or system of operations in which the appellee railroad company was a concurrent or combination actor—for the reasons aforementioned—not that it was a mere single or isolated instance which could not reasonably have been anticipated by the railroad company; so that the third count, in the respect mentioned, presents issues for the jury, rather than questions to be determined on demurrer.

It is said further that the allegation of the declaration that it was necessary for the flagman to be looking to the rear is manifestly untrue; and it is argued that by keeping his eyes in the direction in which the train was moving, he could have looked out for himself as to the maneuvers of the express trucks and at the same time could have told just as well when the rear of the express car had reached the proper point. This is not such a matter as falls within common knowledge of which courts may or must take judicial notice, but is an issue also to be submitted to the jury; and, in any event, it might present merely a question of contributory negligence—as to which we express no opinion at this time.

Much is said also in the briefs about assumption of risk. Under the allegations of the declaration which we have already mentioned in respect to the promise by the railroad company to remedy the dangerous method of operation, that element disappears, so far as the demurrer is concerned. We have recently discussed that question in Pearl River Valley Railroad Co. v. Moody (Miss.), 171 So. 769, and nothing further is necessary to be added here.

Having concluded that the declaration in its third count is sufficient to state a cause of action, it follows that the judgment must be reversed and the cause remanded. And, inasmuch as a judgment of reversal here upon the question of liability operates to vacate the judgment of the circuit court in its entirety and to restore the parties to the exact position which they occupied before the judgment in the trial court was rendered, we do not enter into a discussion of the first and second counts, and express no opinion upon them; because, so far as we may now know, appellant might, after remand, seek and obtain permission to amend those counts, in the light of the attacks directed upon them, if he deem amendment necessary or desirable, under the facts capable of actual proof.

Reversed and remanded.