SAXTON *et al. v.* ROSE *et al.*

(Division B. March 24, 1947.)

[29 So. (2d) 646. No. 36379.]

Henry & Barbour, of Yazoo City, for appellants.

**Butler & Snow,** of Jackson, and **J. G. Holmes,** of Yazoo City, for appellees.

818

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Steve Saxton was killed in the wreck of a truck between Tchula and Yazoo City on August 22, 1945. The truck was owned by appellee Rose and driven by appellee Eldridge. The widow of the deceased brought suit against them both for herself and her two daughters, as their next friend, she and they being the sole heirs-at-law of Steve Saxton.

The declaration charged negligence of appellees in two counts, as the proximate cause of the death of their deceased. The first count charged that appellee Eldridge, with the permission of appellee Rose, had been customarily allowing other persons to ride on the truck with him, and that on this particular occasion "while the said Eldridge was in a state of intoxication to the extent that rendered him incompetent to safely operate said truck; while so situated defendant Eldridge in a grossly negligent and careless manner ran said truck off the highway, being Highway 49-E, at a point north of Yazoo City at a time when said highway was unobstructed and straight and built on an embankment, causing said truck to overturn and producing injuries to plaintiff's intestate which caused his death." It was further charged that Saxton was riding with appellee Eldridge as a guest, and that the truck was then and there being operated in and about the business of the master, Rose, by his agent and servant, Eldridge.

The second count was based on the alleged negligence of' appellee Rose in hiring and permitting the appellee Eldridge to operate for him, and in business, such a dangerous agency as a truck, when Rose knew, or ought to have known, that "he habitually became intoxicated and rendered himself unfit to operate said truck by reason of said intoxication." It was alleged that such negligent employment resulted in the death of deceased, as Eldridge was driving this truck while he was in a drunken condition, at the time deceased met his death.

All of this was denied by a plea of the general issue and notice thereunder, "under all of the circumstances said decedent assumed all the risks incident to riding in the truck on said trip and at the time and place of the accident." Appellants went to great pains to prove by numerous witnesses that appellee Eldridge was drunk on this occasion. He alone specifically denied it, but appellant, without rebuttal, also overwhelmingly impeached the credibility of Eldridge. So appellants are in no position to use his testimony as creating a conflict in the evidence, and thereby challenging the peremptory instructions granted appellees. Indeed, they do not attempt to do so. The credible evidence overwhelmingly sustains the charge that appellee, Eldridge, the driver of the truck, was, in fact, in a drunken condition when the party left Tchula, and at the scene of the wreck. He was addicted to the habit of drinking intoxicating liquors to excess at frequent intervals in his daily life. The deceased sat next to Eldridge as they left Tchula, on the crowded seat of the truck, engaged him in conversation, and is bound to have known that he was driving the truck while intoxicated. Saxton made no protest, did not leave the party upon its departure from Tchula, or offer or ask to get out of the truck before the fatal accident. He dared to accept the hazards of the adventure, fully aware of them, and the result of his risk was his untimely death.

On the day mentioned, the appellee Rose instructed appellee, Eldridge, to drive the truck here involved from Tinsley, his headquarters, to a repair shop in Yazoo City, for attention to its brakes, and when this was finished, he was to return it to Tinsley and park it. But, Eldridge, after the brakes were mended, decided to take his brother-in-law, Sims, home instead. On the way out of Yazoo City, they stopped at a tavern, and there deceased induced Eldridge to drive to Tchula instead of to the home of Sims. Too, there was some intimation in the proof, that a dance at Tchula was the inducement. However, the purpose is immaterial here, under the circumstances, in view of the conclusion we have reached. In other words, decision here does not depend upon whether Eldridge was about the business of himself, or about the business of his master, Rose.

We are further of the opinion that even if it be conceded, for the sake of discussion (but which we do not decide), that appellee, Rose, was negligent in employing appellee, Eldridge, who was or should have been known to him to be an habitual drunkard, and permitted him to accept passengers in this truck designed only for use in hauling oil or water in the tank attached, appellees are not liable for the death of the deceased, Saxton, because of his own negligence in assuming the risk involved in being driven by one so drunk as to be obviously incompetent to drive.

Appellants argue that if deceased were negligent, his negligence was comparative and brought into play Section 1454, Code 1942, and cite Watson v. Holiman, 169 Miss. 585, 153 So. 669, but there the Court said: "Appellant contends, also, that the passenger by his acts and conduct procured the servant to drive at the reckless and dangerous rate of speed, in that upon the departure on the trip the passenger had stated that he would not go except upon condition that he be speedily returned." This Court there held that such active participation in the event by the passenger was contributory negligence,

which was not a bar but "available only by way of diminution of damages." Here, we have no activity or participation, either in the doing or the procuring of the doing, of the alleged negligent conduct of the driver of the truck by the deceased Saxton. As stated, supra, he sat himself down on the crowded front seat of this truck, in the middle, between Eldridge at the wheel and two others, and knew Eldridge was drunk, and proceeded miles on the way to Yazoo City in such a situation without objection or effort to leave the truck. He knew it was not equipped for passengers, but only to haul oil or water. As said ante, appellees rely on the applicability here of the doctrine of assumption of risk. They say that since the deceased voluntarily went into this dangerous situation, with his eyes open, knowing that the driver was intoxicated, and therefore incompetent to drive safely,—he assumed the risk of the happening of what did happen here. Appellants very interestingly argue the question of whether or not Eldridge was on a private party or had finished it, and had resumed his master's service; and also their further point that appellee Rose was negligent in employing a known habitual drunkard, giving him custody of the truck for both business and personal use. We deem it unnecessary to discuss such issues, as we think that either contributory negligence or the assumption of risk are the determining factors for consideration in this case, and decision will rest upon which is applicable.

It is true that the truck was originally entrusted to Eldridge on the day of the tragedy for purpose of having it repaired, and after such repairs were finished, that, instead of returning the truck to its parking lot as instructed, Eldridge embarked upon a personal and private trip. It is also true that he was returning from the destination of that trip, Tchula, to Yazoo City, the point of his original departure upon it. If he had reached Yazoo City he would then be on the road to Tinsley, where he had been ordered to return and park the truck, after the repairs which had been completed. Here is where the

other points raised by appellants have their basis. After careful consideration, we have reached the conclusion that all issues and questions are solvable here by the application of the doctrine of assumption of risk. We are, therefore, of the opinion that the trial court was correct in granting both appellees the requested peremptory instructions at the end of all the testimony, for the reasons set forth, post.

The common-law doctrine of assumption of risk is in full force in this State except as between master and servant. McDonald v. Wilmut Gas & Oil Co., 180 Miss. 350, 176 So. 395. There is no contention here that the relationship of master and servant existed between the driver Eldridge and the decedent Saxton. We reach, therefore, the distinction between assumption of risk and contributory negligence as known to the common law. "Assumption of risk," sometimes called "incurred risk," applies when a party voluntarily and knowingly places himself in such a position, or submits himself to such a condition, appreciating that injury to himself on account thereof is liable to occur at any and all times so long as such position or condition continues. Contributory negligence arises when, but not until, the injured person by his own conduct has done something, or has omitted to do something, which contributes to the particular event, and at the particular time and place, which was the immediate cause of the injury. The distinction has been tersely said to be that assumption of risk is "venturousness" on the part of the person injured, while contributory negligence is his "carelessness." See, for instance, 45 C. J., pp. 1043, 1044.

Let us assume that when Saxton requested Eldridge to drive him to Tchula, Eldridge had told him that the motor truck was out of repair, specifying in what respects it was out of repair, and that Saxton had insisted nevertheless that the trip be taken, and that while in the course thereof the injury occurred as a result of the particular defects mentioned. We will suppose that none none would dispute that Saxton had assumed the risk and could not

recover. Let us assume that Eldridge did not tell Saxton of the defective condition of the motor vehicle, but that Saxton had independent knowledge thereof so that had Eldridge told him he would thereby have gained no knowledge that he did not already have. Again, we will suppose that none would dispute that Saxton had assumed the risk for an injury arising out of the defective condition.

Let us proceed further and assume that upon embarking upon the trip, or during the course thereof, Eldridge had told Saxton that he, Eldridge, was in an intoxicated condition to the extent that it was an unsafe venture for Saxton to take, and nevertheless Saxton voluntarily and without effective protest went along, and as a consequence of the intoxicated condition of Eldridge, the injury occurred,—we will suppose that none would contend that Saxton had not assumed the risk embraced in Eldridge's intoxicated condition. And we will suppose that none would contend that the same result would follow if Saxton had the same knowledge of Eldridge's intoxication as if Eldridge himself had truthfully asserted and confessed it.

The dominant allegation in both counts of the plaintiffs' declaration is that the driver Eldridge was intoxicated and that his intoxication was the cause which produced the injury and death. Plaintiffs introduced Eldridge as their first witness, but as an adverse witness. He denied that he was intoxicated on the occasion of the injury, or that he had been drinking at all. Appellants did not accept this as true and reframe their pleadings and the theory thereof accordingly, but proceeded to prove by witness after witness that Eldridge was drunk, and this by observations made of him by the witnesses both as to his appearance and his actions. But, all the proof disclosed that from the time Eldridge and Saxton left Yazoo City and all of the way to Tchula, and from Tchula back to the point where the injury occurred, Saxton was along, and if these witnesses for plaintiff could legitimately say

that Eldridge was drunk, that fact could not have escaped the observation and knowledge of Saxton, unless he himself was so drunk that he was unable to comprehend what he saw and heard; but his own voluntary drunkenness will not excuse him from the rule, as was held in Schubring v. Weggen, 234 Wis. 517, 291 N. W. 788.

The result is that plaintiffs are not in any position to maintain that Eldridge was drunk as they did maintain and prove, and at the same time insist that Saxton did not know it, or that by the sensible use of his eyes and ears would not have ascertained it. The consequence is, finally, then that the peremptory charges for both appellees here, defendants below, were proper, and this without further examination into other features of the case. Along this line this Court has said: "If it is manifest that the host, from drunkenness, or other cause, is unfit to drive the car, and that his driving will endanger the life and limbs of others, and the guest is aware of that condition of affairs, and voluntarily rides in the car with such a host, the negligence of the latter becomes the negligence of the guest." Chapman v. Powers, 150 Miss. 687, 116 So. 609, 611. See also 38 Am. Jur., Section 171, p. 845, to the effect that "The maxim, 'volenti non fit injuria,' applies in a proper case independently of any contract relation. It is said that one who knows, appreciates, and deliberately exposes himself to a danger 'assumes the risk' thereof."

The judgment of the trial court is, therefore, affirmed.
Affirmed.