214 So.2d 671 (1968)
CANTON BROILER FARMS, INC. and Isaac Jones, Defendants, Appellants.
v.
Eley N. WARREN, Plaintiff, Appellee.
No. 44987.
Supreme Court of Mississippi.
October 14, 1968.
*672 Cary E. Bufkin, Satterfield, Shell, Williams & Buford, Jackson, for appellants.
Tom S. Lee, Thomas D. Lee and Roy Noble Lee, Forest, for appellee.
PATTERSON, Justice:
This case was originally filed in the Circuit Court of Scott County. Eley N. Warren, the plaintiff, sought damages for personal injuries he received when the car in which he was riding as a passenger was involved in an accident with an overturned tractor-trailer truck and a pickup truck. The driver and the owner of the tractor-trailer truck appeal to this Court from a judgment of $5,000 against them.
Prior to dawn on October 31, 1967, a tractor-trailer truck owned by Canton Broiler Farms, Inc. and driven by Isaac Jones, its employee, overturned on Highway 43 between West Leesburg and Canton, Mississippi. The truck was loaded with crates of chickens and was traveling in a westerly direction toward Canton when it overturned. The trailer portion of the truck lay entirely off the highway and on the shoulder of the road. However, a portion of the overturned tractor extended some twelve to twenty-four inches into the westbound lane of the highway. According to some of the testimony there were crates of chickens lying in the westbound lane.
Immediately after the truck overturned, Jones made an inspection of the damages. Although there were flares and fusees in the truck, he did not place them in the highway as a warning to other vehicles as required by law. His reason for not doing so was that all the lights on the tractor and trailer were burning, this being sufficient, in the opinion of the witness, to alert any motorist to the obstruction in the highway. Other witnesses who passed the overturned truck testified that the lights of the truck were burning and visible for some distance. There is physical evidence that the trailer was equipped with several running lights or reflectors, but due to the position of the trailer, none of these lights was in the highway.
Shortly after the truck overturned, Jones left the scene in order to call a wrecker. While he was away, James C. Bailey, the owner of the pickup truck, passed the overturned tractor-trailer while on his way to work in Canton. After proceeding two or three miles, Bailey turned and came back to see if he could be of assistance. He stopped his pickup on the northern shoulder of the highway with the right front portion of the vehicle extending into the westbound lane some distance further than that of the overturned tractor. The pickup was facing eastward toward the front of the overturned truck. It was positioned so that the beam of its right headlight was directed toward the east and into *673 the westbound lane of traffic. Bailey testified that he parked his pickup in this position in order to see into the cab of the overturned tractor to ascertain if anyone was pinned therein. He testified further that his truck was left in neutral gear with the motor running.
Jones returned to his truck at about the time Bailey was parking his pickup. They then engaged in conversation while standing between the two trucks. Immediately thereafter H.D. Warren and his brother, Eley, approached from the east in a new Volkswagen. Eley Warren, the plaintiff, was riding as a passenger in the right front seat of his brother's car. The evidence reflects that as the two men in the Volkswagen approached the scene of the overturned truck they saw a beam of light which appeared to them to be in their lane of traffic. According to the testimony of the driver, H.D. Warren, he was driving at about forty miles per hour when he first observed the light. He testified that he continued to drive at about this speed until very close to the source of the light. As he approached the light he testified he reduced speed and moved to the right side of his lane, thinking that this would be sufficient to avoid what he thought to be a one-eyed car in his lane. About six feet from the truck he struck a chicken crate and at this point first saw the overturned tractor-trailer. He immediately swung back to the left in an attempt to avoid a collision. He struck the right front fender of the overturned tractor and then collided with the right front portion of the pickup. He at no time admitted seeing the lights of the overturned tractor-trailer and denied that he was "completely blinded" by the lights of the parked pickup truck.
The plaintiff testified that he was totally blinded by the beam of light, but that he did not remonstrate with the driver as to any precautionary measures he should take since, "he slowed down and I thought he was going to stop, but he kept going." He further testified that he did not see any lights on the overturned truck. There is a conflict in the evidence as to whether the driver of the Volkswagen later remarked to his brother and other witnesses that his vision was totally obscured by the beam of light.
The evidence is conflicting as to the point where the driver applied his brakes with such force as to lay down skid marks. The investigating officer attributed skid marks of some twenty-seven feet in the westbound lane to the Volkswagen. The driver testified he skidded only after striking a chicken crate which was very close to the overturned truck. The officer also testified, as did other witnesses, that the Volkswagen struck the overturned truck prior to colliding with the pickup. This is substantiated by paint of the truck being found on the Volkswagen. Jones testified that the blow from the Volkswagen was of such force as to knock the pickup to the south side of the road and turn it toward the west. The plaintiff and his brother both testified to the contrary, stating that Bailey drove his pickup to the south side of the road after the accident.
The plaintiff testified that he was thrown against the windshield or dashboard of the car in which he was riding when it struck the pickup truck. In addition, he testified that he was struck from behind by an outboard motor, weighing approximately seventy pounds, which had been lying on the back seat of the Volkswagen and was projected forward at the time of impact. As the result of this he claimed to have received injuries to the muscles and ligaments of his back and neck, as well as injuries to his right knee, right hand, right elbow, and various other bruises and contusions. This testimony was corroborated by that of Dr. G.G. Townsend who stated that he treated the appellee after the accident and that the plaintiff had in fact suffered the injuries complained of. He testified further that the injuries were painful and of a permanent nature. On cross-examination it was developed that the plaintiff had previously *674 suffered from arthritis and had prior injuries to his right knee and right hand.
The plaintiff brought suit against Canton Poultry, Inc., Canton Broiler Farms, Inc., Isaac Jones, the driver of the overturned tractor-trailer, James C. Bailey, the driver of the pickup truck, and H.D. Warren, the driver of the Volkswagen. He alleged that Jones was an agent and employee of Canton Poultry, Inc. and Canton Broiler Farms, Inc., the owner of the truck; that James C. Bailey was also an agent of said corporations. The negligence of these corporations as to their respective agents was alleged to be, the failure of Jones to place flares as required by statute; he was negligent in blocking the westbound lane of traffic; and he was under a duty to flag approaching traffic to warn them of the existing hazard. The declaration charged Bailey with being negligent in parking his pickup truck on the north side of the highway in the westbound traffic lane in such a position that the beam of one of its headlights shone eastward in the lane of traffic in which the Warrens were traveling, thus confusing the approaching driver. The declaration further alleged that H.D. Warren was under a duty to maintain a proper lookout for other vehicles and was negligent in not maintaining control of his vehicle, all of which negligence, it was averred, was the proximate cause of the accident and the resulting injuries to the plaintiff.
Canton Poultry, Inc. pled that it had been improperly joined as a defendant in the suit, it having no interest in the premises. Canton Broiler Farms, Inc. and Isaac Jones answered, admitting that Canton Broiler Farms, Inc. owned the overturned tractor-trailer truck which was driven by Jones, its employee. They denied, however, any negligence on the part of Jones, denied that he failed to place warning reflectors, fusees, or other warning signals 100 feet to either side of the overturned truck, and alleged affirmatively that the negligent acts of Bailey and Warren constituted an independent and intervening cause of the accident. Bailey denied any agency relation with Canton Broiler Farms, Inc. or Canton Poultry, Inc. and denied any negligence on his part, averring that the accident resulted solely from the negligence of H.D. Warren driving at an excessive speed and in not keeping his car under control. Warren answered, denying negligence on his part and averred as a defense the occurrence of a sudden emergency, and he further answered by charging Bailey with negligence in wrongfully directing a beam of light into his traffic lane and he charged Jones with negligently failing to place warning flares at his overturned truck, these acts being, according to his answer, the proximate and sole cause of the accident.
At the conclusion of the plaintiff's testimony, a nonsuit was taken as to Canton Poultry, Inc. which had moved for a directed verdict. At the conclusion of all the testimony a nonsuit was taken as to James C. Bailey. Thus the case was submitted to the jury only as to the liability, if any, of H.D. Warren, Canton Broiler Farms, Inc. and Isaac Jones. The jury found for H.D. Warren, but returned a verdict against Isaac Jones and Canton Broiler Farms, Inc. for $5,000.
On appeal these defendants assign as error the following:
1. The court erred in refusing appellants' request for a directed verdict, peremptory instruction and motion for judgment notwithstanding the verdict.
2. The verdict is against the weight of the evidence and the court erred in not granting a new trial.
3. The court erred in granting and refusing certain requested instructions.
4. The verdict of the jury is so excessive as to evince passion and prejudice.
The appellants' argument in support of their first assignment of error is based upon three contentions: First, that H.D. Warren was negligent in driving while blinded, and his negligence was the sole *675 proximate cause of the accident; secondly, that the appellee consented to the injury since he made no effort to prevent the accident; and thirdly, that the negligence of James C. Bailey, alone or together with that of H.D. Warren, was an independent and intervening cause of the accident.
With regard to the first contention, it is the generally recognized rule of law that a motorist who is blinded by approaching lights is under a duty to stop his vehicle, or to reduce its speed, so as to be able to avoid any hazard ahead. This principle was reannounced in Kettle v. Musser's Potato Chips, Inc., 249 Miss. 212, 229, 162 So.2d 243, 248 (1964) wherein we stated:
The rules of law which have application here are well-known and numerous. In 22 A.L.R.2d, § 3, p. 300, we find the general rule discussed with reference to a motorist stopping his car, or having it under such control as is necessary, when his vision was interfered with by glaring and dazzling lights. The general rule paraphrased is simply that when a motorist is blinded by lights, he must either stop if his vision is cut off completely, or, if not cut off completely, then he must proceed at such a rate of speed, and with such control of his vehicle, as to be able to stop in time to avoid any discernable object in the road ahead. B. Kullman & Company v. Samuels, 148 Miss. 871, 114 So. 807 (1927); Terry v. Smylie, 161 Miss. 31, 133 So. 662 (1931); Mississippi Power & Light Company v. Lembo, 202 Miss. 532, 32 So.2d 573 (1947).
This rule is the general tenor of the law. See 22 Am.Jur.2d Automobiles §§ 331-335 (1965) and 60 C.J.S. Motor Vehicles § 293 (1949). It is, however, generally recognized that each case which may arise is unique and will have facts which may or may not fit within the bounds of any general principle. In Jester v. Bailey, 239 Miss. 384, 390, 123 So.2d 442, 444 (1960) we stated:
However, this rule is not a hard and fast one which will preclude recovery in every case in which a motorist fails to stop and collides with an object on the highway. The particular facts and circumstances of each case must be considered. Planters Wholesale Grocery v. Kincade, 1951, 210 Miss. 712, 721, 50 So.2d 578. This is a well-established limitation upon the range-of-lights rule in this state and elsewhere. The annotation in 22 A.L.R.2d 304, citing numerous cases, says: "Strictly applied, the rule that a motorist blinded by the lights of approaching cars must either stop or control his car so as to be able to stop in time to avoid collision with any discernible object in the road ahead allows little chance for a motorist who is so blinded and strikes such an object to escape the imputation of negligence. However, it has frequently been recognized that the rule is subject to certain exceptions and qualifications tempering its harshness."
This case is also authority for the proposition that whether the defendant exercised reasonable control over his vehicle or negligently failed to drive so that he could stop within the range of his headlights is a question for the jury. See also Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So.2d 578 (1951) and Rhodes v. Fullilove, 161 Miss. 41, 134 So. 840 (1931). In the present case the driver of the Volkswagen was not blinded according to his own testimony. There is, however, evidence to the contrary. The question became, therefore, one of fact for determination by the jury. We conclude there was no error on the part of the trial court in refusing a peremptory instruction on this point.
The next argument advanced by the appellants is that the plaintiff consented to the injury since he made no effort to prevent the accident. They base such claim on the axiom "volenti non fit injuria" or that to which one assents is not esteemed in law an injury, citing Morris v. Lammons, 243 Miss. 684, 139 So.2d 867 *676 (1962); Runnels v. Dixie Drive-It-Yourself System, 220 Miss. 678, 71 So.2d 453, 46 A.L.R.2d 397 (1954); and Saxton v. Rose, 201 Miss. 814, 29 So.2d 646 (1947). In Saxton, supra, we stated that for there to be an assumption of risk there must be "* * * one who knows, appreciates and deliberately exposes himself to a danger." (201 Miss. at 825, 29 So.2d at 650). These cases in our opinion are not authority for the contentions of the appellants as in each of them the individual who was held to have assumed the risk had at one point been in a position to avoid a specific danger which he knew existed. In this case the testimony of plaintiff does not indicate that he was aware of the impending danger as his testimony with regard thereto was "he slowed down and I thought he was going to stop, but he kept going." Indulging the assumption that the plaintiff, as a reasonable man, must have been aware of some danger in view of his testimony that he was totally blinded and therefore must have known there was a great probability of some object in their lane of traffic being struck with disastrous results, yet the law is clear that one has the right to rely upon a driver to perform his duty until it becomes apparent that he will not do so. The position of the appellants is analogous to that of the railroad company in Yaz & M.V.R. Co. v. Beasley, 158 Miss. 370, 380, 130 So. 499, 502 (1930) wherein we stated:
* * * The position of the railroad company on this question seems to be that the rule should be so extended as to make of a guest what is commonly called a "back-seat driver," and that he must anticipate danger at all events whether it is apparent or not. Such is not the law.
See also Columbus & G.R.R. Co. v. Fondren, 154 Miss. 40, 121 So. 838 (1929). We conclude that the trial court committed no error in refusing to peremptorily instruct the jury that the plaintiff assumed the negligence, if any, of the driver of the car.
The third argument of appellants concerns whether or not the act or acts of Bailey and Warren, either considered alone or together, constitute an independent and intervening cause of negligence which was the proximate cause of the accident, and as such superseded the uncontroverted negligence of Jones in failing to place warning flares 100 feet in advance of, 100 feet to the rear of, and one to the side of his distressed truck as required by Mississippi Code 1942 Annotated section 8256(b) (Supp. 1966). This Court has defined independent and intervening negligence in Hoke v. W.L. Holcomb & Associates, Inc., 186 So.2d 474, 477 (Miss. 1966) as:
Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a nonactionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof. The question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury? 38 Am.Jur., p. 702; Thompson v. Mississippi Cent. R. Co., 175 Miss. 547, 554, 166 So. 353. And so say all the authorities, among which, as a striking illustration, is Bufkin v. Louisville & N.R. Co., 161 Miss. 594, 137 So. 517. ([Mississippi City Lines v. Bullock] 194 Miss. [630] at 639-640, 13 So.2d at [34] 36 [145 A.L.R. 1199.].)
This definition presupposes that independent and intervening negligence was not foreseeable, for if foreseeable, the subsequent negligence is not independent and intervening, but is concurrent with the prior *677 negligence. In McCorkle v. United Gas Pipe Line Co., 253 Miss. 169, 188, 175 So.2d 480, 489 (1965) we stated:
In Ross v. Louisville & N.R.R. [Co.] supra [178 Miss. 69, 172 So. 752], we held: "`(T)he rule is that, if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury.' Russell v. Williams, 168 Miss. 181, 193, 150 So. 528, 151 So. 372, 373. But more properly, what we have here, under the allegations of the declaration, is a case of concurrent negligence, as to which each of the concurring tort feasors is liable." (178 Miss. at 84, 172 So. at 755.)
With these principles in mind, the apparent question is whether Jones could reasonably anticipate the subsequent act of Bailey in parking his truck on the northern side of the highway so that its lights would shine to the east into the west lane of traffic and additionally, whether he could foresee that a motorist would likely become blinded thereby and drive into the overturned tractor-trailer and the pickup truck. It seems clear, of course, that no mortal could foresee that which happened. The real question is, could the defendant reasonably foresee that some accident and injury would probably result from his violation of the Mississippi statute with regard to the placing of warning lights as required by law to warn other motorists of the partially obstructed highway. In Prosser, Torts section 51 at 313 (3d ed. 1964) it is stated:
The risk created by the defendant may include the intervention of the foreseeable negligence of others. As we have seen above, the standard of reasonable conduct may require the defendant to protect the plaintiff against "that occasional negligence which is one of the ordinary incidents of human life, and therefore to be anticipated."
Again at Page 314:
* * * But once it is determined that the defendant's duty requires him to anticipate the intervening misconduct, and guard against it, it follows that it cannot supersede his liability.
Prosser states further in discussing normal intervening causes at Page 315:
There are other intervening causes which could scarcely have been contemplated by any reasonable man in the place of the defendant at the time of his conduct, but which are nevertheless to be regarded as normal incidents of the risks he has created. * * *
* * * They are closely and reasonably associated with the immediate consequences of the defendant's act, and form a normal part of its aftermath; and to that extent they are not foreign to the scope of the risk created by the original negligence. For the most part they have been called foreseeable by the courts; but that word obviously has traveled a long way from its original meaning in connection with the risk created by negligence.
We have considered the evidence in detail as to this accident and we are unable to say that the defendant's failure to set out flares as required by statute did not play a substantial part in the resulting accident, as it not only set the place and occasion, but was the initial step in a series of continuing events that led to the injury. It was at least a question for the determination of the jury.
In Prosser, Torts section 52 at 330 (1964) it is stated:
In any case where there might be reasonable difference of opinion as the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening cause, the question is for the jury * * *.
*678 Our courts are in accord with this foregoing pronouncement. See Hoke v. W.L. Holcomb & Associates, Inc., 186 So.2d 474 (Miss. 1966) and Ross v. Louisville & N.R. Co., 181 Miss. 69, 172 So. 752 (1937). We are of the opinion that the question of independent and intervening negligence being the sole and proximate cause of the accident was properly left to the jury.
The appellants' second assignment of error is that the verdict of the jury is against the weight of the evidence and the court erred in not granting a new trial. As stated, we have studied the entirety of the record and it is our opinion that there was evidence upon which the jury could reasonably find for the plaintiff. The appellants center their argument in this assignment to the fact that the jury found for the defendant Warren and against them. We do not think this argument is persuasive as the appellants are in no position to complain of the release of an alleged joint tort feasor. Miss.Code 1942 Ann. § 1988 (1956).
The appellants next complain of certain instructions granted the appellee and all of the instructions granted the defendant Warren.
The third assignment of error is directed at various instructions granted and refused by the court. Appellants complain that appellee's instruction number 5 is patently erroneous. This instruction is as follows:
The Court instructs the jury for the plaintiff that the plaintiff was a guest passenger in the automobile driven by the defendant, H.D. Warren, and if you believe from a preponderance of the evidence in this case that plaintiff, acting as a reasonable person, could do nothing to prevent the collision, then any negligence of the defendant, H.D. Warren, if any, cannot be imputed to the plaintiff.
This contention is not well taken in view of our discussion of assumption of risk under the first assignment of error. Appellants further complain that appellee's instruction number 6 does not give sufficient guidance to the jury in determining compensation for damages. It is apparent that this instruction, though somewhat vague, is cured by instruction number 7 which specifically delineates those factors to be considered in determination of damages.
The remainder of the third assignment of error deals with the court's failure to grant appellee's request for a peremptory instruction against H.D. Warren. It must be noted that appellants did not join in such request nor make a similar request. Appellants object to virtually all of the instructions granted H.D. Warren. This assignment of error is whethout merit since Mississippi Code 1942 Annotated section 1988 (1956) states that one may not complain of errors made by the court in a co-defendant's case so long as they do not affect his own rights. See Yazoo & M.V.R. Company v. Hardie, 100 Miss. 132, 55 So. 42, 967, 34 L.R.A., N.S., 740, 742 (1911); Illinois Central Railroad Company v. Clark, 85 Miss. 691, 38 So. 97 (1905). Also see Junkins v. Brown, 238 Miss. 142, 117 So.2d 712 (1960).
The fourth assignment of error appertains to the question of whether damages granted by the jury were excessive. The verdict was for $5,000. Appellee is a man 70 years of age. He testified that his injuries were painful and of a permanent nature. This testimony was corroborated by a competent physician. The appellee was a manual laborer, employed as a concrete finisher. The evidence reflects that he will be unable to continue such work for some time and that he will be somewhat restricted in his future activities. Appellants cite no authorities which indicate that this verdict is excessive and in view of the evidence we cannot state that the verdict is unreasonable.
Affirmed.
ETHRIDGE, C.J., and INZER, SMITH and ROBERTSON, JJ., concur.