Rose T. QUAVE, Plaintiff,

v.

Bernard A. RAY, Defendant.

Civ. A. No. 73S–110(R).

United States District Court,
S. D. Mississippi, S. D.

June 21, 1974.

Toxey Hall Smith, Jr., Wiggins, Miss., for plaintiff.

William F. Dukes, Gulfport, Miss., for defendant.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

In this diversity action, Mrs. Rose T. Quave (Giles), a resident of Harrison County, Mississippi, filed a tort action against Dr. Bernard A. Ray, a resident of South Carolina, charging him with liability for her injuries resulting from an automobile accident. Plaintiff alleged that while she was a passenger in her own vehicle, being driven by defendant Ray, he negligently turned from the east bound lanes into the west bound lanes of U. S. Highway 90 between Gulfport and Biloxi, Mississippi, drove into the path of an oncoming car, which collided with plaintiff's vehicle, resulting in serious and permanent injuries to plaintiff. Plaintiff alleged that defendant was negligent in turning into the west bound lanes under the circumstances then existing, in failing to use ordinary care in the operation of said vehicle; in failing to observe the rules of the road and to keep a proper lookout; and in failing to take evasive action to avoid the collision. Defendant Ray denied each and every allegation of negligence, averring that before making a left turn into the west bound lanes, he stopped, ascertained that the way was clear, and had completed his turn when the vehicle he and plaintiff were occupying was struck by a 1968 Mustang driven by Stephan J. Stevens. Defendant Ray affirmatively pled that he was a guest at the Ramada Inn at Biloxi; that during the evening of June 23, 1973, he went to the cocktail lounge for a drink; that he sat at a table adjoining one at which plaintiff and two women companions were drinking; that, although he had not previously known plaintiff, she, several hours later, requested him to drive her home. Ray averred that plaintiff knew he had been drinking alcoholic beverages and voluntarily assumed the risk of riding in her automobile which defendant drove at her request, and, further, that, if there were any negligence on his part, such negligence was imputed to plaintiff inasmuch as she was in control of the entire trip which was for her benefit. He averred that at her direction he drove west on Highway 90; that she directed him to turn around and go back to a restaurant; that he made a U-turn headed back east, and, at plaintiff's direction, made another left turn to proceed westerly again; that before entering the west bound lanes, he stopped, completed his turn and was struck by the Stevens' automobile.

The case was tried to the Court without a jury.

Plaintiff now Rose T. Quave Giles, a resident of D'Iberville, north of Biloxi, testified that on the evening of the accident, she left Mr. Joe's, a supper club located on U.S. Highway 90 in Biloxi which she owned and operated, and went to the Ramada lounge. She was seated at a table with two other women, whose names she could not recall, when the defendant introduced himself and bought them a drink. Somewhile later, plaintiff told Ray that she had to return to Mr. Joe's "to check on things" and invited him to accompany her. She handed him the keys to her car with Ray driving

and arrived at Mr. Joe's between 11:30 p. m. and midnight. They remained long enough to have a drink, and then left for the Fiesta Club on the south side of U.S. Highway 90, because she said Ray wanted to dance. They were served a drink at the Fiesta, plaintiff saying that her drink was Scotch and milk which she did not drink all of because her stomach hurt. They then left the Fiesta, headed west on Highway 90 toward Gulfport to find a restaurant, she to get milk, and he, according to plaintiff, to get breakfast. Ray was driving. Plaintiff's and defendant's testimony was generally in accord up to the time they left Mr. Joe's. Thereafter their accounts differed. Ray had no recollection of having stopped at the Fiesta. He did agree that they headed west to find a restaurant. According to him she gave the directions, and at a point near the subsequent accident, she said they had passed a side street where there might be a place to eat. He, following her directions, made a 180° left turn at what was later established as Teagarden Road, proceeded a block east, and, again at her direction, turned left again, entering the west bound lanes of the highway. Ray said he had completed his turn and was in the north or right hand lane of the two west bound lanes approximately 100 feet from where he turned when he was struck by the Stevens car. He did not see Stevens' car, and did not know where it had come from. He said that plaintiff's car came to rest in the north lane with the Stevens car north of him on an access or service lane. Although the two cars came to rest parallel to each other, Ray admitted that the damage to plaintiff's car was to its right front and right center door post. Mrs. Quave denied that she directed Ray to make either U-turn. She said that at that point in their trip, she had her head back on the front seat with her eyes closed and saw no part of the accident until she heard the noise of the collision and was thrown on to the front floor of the car.

Stephan J. Stevens, driver of the other car, was the only other eye witness to testify. He was on his way to his home in Gulfport from working in the kitchen of his father's restaurant, Gus Stevens, located on U. S. Highway 90 in Biloxi. Stevens had rounded a slight curve east of the accident scene and was in the south, west bound lane when Ray made a U-turn in front of him. Stevens said he veered right trying to avoid the accident but the left side of his car hit the Quave car on its right side toward the front bumper. He denied that Ray had stopped before entering the west bound lanes, saying that Ray was in continuous motion. He said that both cars came to rest in the service drive in front of Fairchild's motel. In elaborating, Stevens said he was going 40 miles per hour 100 feet from where the collision occurred. There was no car between him and Ray. He saw Ray's headlights facing east, then the lights swerved north across the road 75 feet in front of him. Stevens said he applied his brakes and turned right to avoid the accident, but that Ray's vehicle blocked both lanes. Both cars traveled 30 feet after impact, parallel to each other, facing west. Stevens said that plaintiff said she was not hurt and did not want an ambulance. He said he smelled alcohol on both Ray and plaintiff.

The first officer to arrive on the scene testified that the accident occurred at 2:15 a.m. He arrived at 2:30 a.m., after both vehicles had been moved. He, of course, did not know how the accident had occurred. He offered to call an ambulance for Mrs. Quave but she refused. He smelled alcohol on her, but said he did not get close enough to Ray to detect alcohol on him.

Although Ray himself admitted that he went to the police station in Gulfport, there was no evidence that he was requested to submit to any test for alcoholism.

■ Defendant strongly contends that plaintiff failed in her burden to prove that he was negligent, but says that if

128

he should be found guilty of negligence which caused or contributed to the accident, plaintiff should recover nothing from him as she assumed the risk of his driving after she had knowledge that he had been drinking and, further, that she controlled the vehicle. Defendant points to the fact that plaintiff, having testified that she had her eyes closed at the time of collision, and hence did not see the collision, could not say whether defendant was guilty of negligent driving or not. Defendant overlooks the testimony of Stevens who testified that he was on the south portion of the west bound lanes, saw defendant enter both lanes without first stopping, too late for Stevens to do more than brake and swerve right, hitting plaintiff's vehicle, although a glancing blow, nevertheless from the right front to the center door post, the car Ray was driving coming to rest on the north, west bound lane, and Stevens' car parallel, partially on the curb and service drive. The location of the damage to plaintiff's car bears out Stevens' testimony. Ray was unable to say why he did not see Stevens' car. The Court, on the evidence before it, has no alternative but to find that Ray was at fault.

The Court finds no merit to defendant's contention that, as he and plaintiff were on a joint venture or purpose, his negligence must be imputed to her. This may be true as to claims of other parties, but, as between plaintiff and defendant, the rule is well established under Mississippi law that whether joint adventurers, or not, the driver owes a duty to his passenger to exercise ordinary care, unless the passenger assumes control over the actual manipulation of the car. See Hatcher v. Daniel, 228 Miss. 196, 87 So.2d 490, and cases cited therein. In Hatcher the court, citing 61 C.J.S. "Motor Vehicles" § 486, pp. 155, 156, held that a passenger, as a permissive guest, assumes the risk of obvious dangers. He does not, however, assume the risk of a danger created by the negligent operation of a motor vehicle over which he has no control, citing §

487, p. 174, Ibid. The real issue here is not one of joint venture, but whether plaintiff, with knowledge of the fact that defendant was drinking, knowingly assumed the risk that he was driving under the influence of alcohol or was otherwise a careless driver, or whether she assumed control of the vehicle to the extent of actually directing Ray to turn into the path of a car so close as to present a hazard. In his defensive pleading defendant claims the affirmative of these propositions. The Court, however, finds that the evidence does not support defendant's pleadings. Assuming that plaintiff did direct defendant to turn back to the east, and turn again west, which plaintiff denied, even the defendant admitted that she did not tell him to turn directly in front of another car. See Galloway v. Korzekwa, 346 F.Supp. 1086 and Mississippi cases cited therein. Judge Omar R. Smith in Galloway concluded that in Mississippi a member of a joint venture may sue another member for damages sustained because of the negligence of such other member in connection with the joint venture. He also cited 8 Am.Jur.2d "Automobiles and Highway Traffic," # 681 as follows:

"The negligence of one member of a joint enterprise driving a motor vehicle may not be imputed to another member of the joint enterprise riding with him, for the purpose of precluding liability of the former to the latter for personal injuries resulting from the negligent operation of the vehicle. In other words, where one joint adventurer is guilty of a tortious act in the operation of a motor vehicle to the damage of an associate in the joint adventure, he must respond in damages."

Judge Smith found to the same effect language in 61 C.J.S. Motor Vehicles § 486(1), p. 159, as follows:

"With respect to the contributory negligence of the occupant, in case of an injury through the negligence of the driver, the fact that they were engaged in a joint adventure is immate-

rial; and even though they are engaged in such an adventure they owe each other the duty to exercise ordinary care."

As to the fact here that plaintiff was the owner-passenger and defendant Ray the guest-driver, the Court finds no significance therein that would change the rule. Further, it is impossible from the evidence for the Court to accurately determine which of the parties was the inviter and which was the invitee, except for the undisputed evidence that at the moment both entered plaintiff's car, plaintiff had invited the defendant to drive and he had voluntarily accepted.

The Court has concerned itself with what it thinks the closer of the issues stated above. If defendant was intoxicated, did plaintiff assume the risk of defendant's having an accident, or although defendant did not plead contributory negligence, did plaintiff do anything to make herself contributorily liable for her injuries? As to both of these questions, the evidence does not support an affirmative finding. Although the Mississippi Supreme Court appears to look with disfavor on the defense of assumption of risk, it has not hesitated to uphold the doctrine where the facts warrant it. In Morris v. Lammons, 243 Miss. 684, 139 So.2d 867, a plaintiff who continued to ride in her car driven by her sister who was intoxicated was found by a jury to have assumed the risk of injury. The state supreme court, in affirming, found that the jury was warranted in finding that the plaintiff assumed the risk incident to continuing to ride in the car at an excessive speed while the driver was so obviously under the influence of alcohol as to have had to spend the night in jail on account of her intoxication.

■ In Herod v. Grant, Miss., 262 So.2d 781, the court cited cases in which it had approved the necessary elements of assumption of risk as (1) knowledge on the part of the injured party of a condition inconsistent with his safety; (2) appreciation by the injured party of the danger in the condition; and (3) a deliberate and voluntary choice on the part of the injured party to expose his person to that danger in such a manner as to register assent on the continuance of the dangerous condition. In this case, as well as in Elias v. New Laurel Radio Station, Inc., 245 Miss. 170, 146 So.2d 558, the court pointed out that these elements necessarily must be governed by subjective standards, that is knowledge on the part of the plaintiff, and that such knowledge is difficult to prove. Had plaintiff known or had reason to suspect Ray to be a dangerous driver or intoxicated to the point that he drove dangerously, and she willingly, as she did, permitted him to continue to drive, the Court would have no hesitancy in applying the doctrine here. To the contrary, however, both plaintiff and defendant admitted they had several drinks during the course of the evening, yet neither admitted to being intoxicated, nor did either accuse the other of such. As noted before, although the defendant appeared after the wreck at the Gulfport police station, there was no evidence that he was charged with intoxication or requested to submit to a sobriety test. If the accident could be attributable to either reckless or drunken driving, the Court cannot, on the evidence before it, find that plaintiff had knowledge of a condition inconsistent with her safety, or an appreciation of the danger to her person, much less a deliberate intention to expose herself to that danger. For whatever it is worth, the Court notes that, after the accident, plaintiff took over the wheel of her car, dropping the defendant off at his motel in Biloxi before proceeding to her home.

■ Nor can the Court find that plaintiff was contributorily negligent. The distinction between assumption of risk and contributory negligence is discussed by the Mississippi Supreme Court in Saxton v. Rose, 201 Miss. 814, 29 So.2d 646. "Contributory negligence arises when, but not until, the injured person by his own conduct has done something, or has omitted to do something, which contributes to the particu-

lar event, and at the particular time and place, which was the immediate cause of the injury. The distinction has been tersely said to be that assumption of risk is 'venturousness' on the part of the person injured, while contributory negligence is his 'carelessness'." If the Court were to moralize, it could find plaintiff contributorily negligent for turning the keys of her car over to a person on a two or three hour acquaintance to visit the night spots of the Gulf Coast, with herself being a willing passenger, and could similarly find the defendant careless for acquiescing in the adventure. However, at the time and place of the accident, the defendant was in control of the maneuvers of the car which plaintiff in no way contributed to or interfered with.

It remains to assess plaintiff's damages. Following the accident, at least two persons, the first officer to arrive on the scene and Stevens, asked plaintiff if she was injured and if she would like an ambulance to be called. They said she had no visible injuries, professed not to be hurt and refused the offer of ambulance service. Plaintiff testified to the contrary saying her left hip was hurt and that she had a bump on her head. She, admittedly, drove herself home where she soaked her hip in hot water. The next day her back hurt. She said that she put off seeing a doctor as long as she could, but that her back became so painful she could not perform the duties required of her as hostess, cashier and bar tender at her club. She successively saw five doctors, two of whom are othopedics. All put her on conservative treatment from which she says she has received no relief. Only one of the doctors testified, Dr. Donald J. Booth, a Biloxi surgeon. Dr. Booth said he saw and examined plaintiff on October 31, 1973, taking a history of her account of the accident which occurred sixteen months before he first saw her. Although he found a congenital back condition, unrelated to the accident, it was his opinion that she had suffered a back strain caused by the accident which has become chronic and which is a condition that will not correct itself. He, like the other doctors, recommended muscle relaxants, pain medication, heat treatments and bed rest.

Plaintiff professed not to know her income prior to the accident. She offered to produce her financial records during the trial but they were not forthcoming. She did say that in the operation of her club she had expected to lose money during the first two years, and that, because of the accident, she had been compelled to sell the business within that time at a loss. She had, at a pre-trial deposition, refused to furnish defendant with her most recent tax returns. For this Court to attempt to fix damages for any loss of income attributable to this accident would be wholly conjectural. The Court finds that plaintiff wholly failed to show a loss of income due to the accident and therefore awards none. As to medical expenses, plaintiff testified that she paid $600.00 to Dr. Zeb Addelott of either Biloxi or Ocean Springs, Mississippi. She produced no evidence of same, either through her own records or that of the doctor, or any evidence of other medical expenses, except the sum of $115.00 testified to by Dr. Booth who said his charges were reasonable for the services rendered in connection with her back ailment. She has not at any time been hospitalized. On the evidence before it, this Court finds that reasonable compensation for plaintiff's injuries, her pain and suffering, both past and future is the sum of $7500.00.

An appropriate order may be submitted with costs of court taxed to the defendant.