# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CT-00445-SCT

*SOUTHLAND MANAGEMENT COMPANY*

*v.*

*PAUL BROWN, A MINOR, BY AND THROUGH HIS*
*MOTHER AND NEXT FRIEND, ALBERTA BROWN*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | MARCH 22, 1996 |
| TRIAL JUDGE: | JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL WAYNE BAXTER |
| | CHARLES COPELAND |
| | RHONDA COOPER |
| | LEE GRIFFIN TYNDALL |
| ATTORNEY FOR APPELLEE: | BOB OWENS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 10/29/98 |
| MOTION FOR REHEARING FILED: | 11/12/98 |
| MANDATE ISSUED: | 3/3/99 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

¶1. This matter comes before the Court after having granted Paul Brown's petition for writ of certiorari. After careful consideration, we conclude that the Court of Appeals was correct on all issues. Accordingly, we affirm the decision. A copy of the majority opinion of the Court of Appeals is annexed as Exhibit A.

¶2. **THE DECISION OF THE COURT OF APPEALS IS AFFIRMED.**

**PITTMAN, P.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, McRAE, AND WALLER, JJ.**

**APPENDIX A**

IN THE COURT OF APPEALS

OF THE

STATE OF MISSISSIPPI

NO. 96-CA-00445 COA

SOUTHLAND MANAGEMENT COMPANY        APPELLANT

v.

PAUL BROWN, A MINOR, BY AND THROUGH HIS   APPELLEE
MOTHER AND NEXT FRIEND, ALBERTA BROWN

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND
MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL WAYNE BAXTER |
| | CHARLES GREGORY COPELAND |
| | RHONDA C. COOPER |
| | LEE GRIFFIN TYNDALL |
| ATTORNEY FOR APPELLEE: | BOBBY OWENS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | JURY VERDICT AGAINST SOUTHLAND FOR $2,000,000, REDUCED BY $20,000 PAID BY SETTLEMENT WITH OTHER PARTY. |
| DISPOSITION: | REVERSED AND RENDERED - 10/21/97 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE McMILLIN, P.J., COLEMAN, AND PAYNE, JJ.

McMILLIN, P.J., FOR THE COURT:

The Court is called upon today to decide whether a jury verdict for the plaintiff in this personal injury case may stand. The verdict was returned in the Circuit Court of the First Judicial District of Hinds County, and the defendant has appealed to this Court, citing eight issues it claims would require us to reverse the verdict. We conclude that one of the issues has merit, and we reverse and render a verdict in favor of the defendant.

## I.

## Facts

The defendant, Southland Management Company (Southland), acted as a management company for an apartment complex in the city of Jackson. Southland employees, in the course of a repair project in one unit, removed a number of bathroom floor tiles. A Southland employee deposited the residue from this project, including the tile fragments, in a wooded area adjacent to the complex. Some time thereafter, a number of children from the complex, in the age range of six to eleven years, were playing in the woods. In the course of their play, they discovered the tiles and began throwing them. Tragically, one of the thrown pieces of tile struck a member of the group, Paul Brown, in the eye. The accident caused serious injuries that ultimately led to the surgical removal of Brown's eye.

Brown commenced this action against Southland, claiming negligence in the disposal of the construction residue. There was testimony that the wooded area where Brown was injured was frequently used by children in the complex as a play area and that the tile pieces had been deposited in a location that was near a clearly visible and well-worn pathway leading from the complex into the woods. Brown contended that the misuse of the residue by playing children was a foreseeable event under the circumstances, thus making the disposal of the scraps in that location a proximate contributing cause of his injury.

Brown claimed at trial that the tile had been purposely thrown at him in the course of a game played by the children that they called "War." The game, according to Brown, involved dividing into teams and assaulting each other with pine cones, horse apples, sticks, rocks, and any other throwable objects that could be found lying at hand on the ground. There was no evidence that any agent or employee of Southland was aware that these children were engaging in such activities in the seclusion of this wooded area.

The jury returned a verdict against Southland in the amount of $2,000,000, which the trial court reduced to $1,980,000 to credit an amount received by Brown in a separate settlement against another potential defendant. Southland perfected this appeal from the judgment entered on the jury's verdict.

## II.

## Discussion

Southland argues on appeal that the act of Brown's companion, in retrieving a piece of tile from the refuse heap and throwing it, was an independent intervening cause rendering Southland's earlier act of dumping the tile scraps in the woods -- even if negligent -- too remote to be a proximate cause or proximate contributing cause of Brown's injuries. This Court agrees.

A claim based on negligence must begin with the existence of a duty owed by the defendant to the plaintiff

and a breach of that duty. *Skelton v. Twin County Rural Elec. Ass'n,* 611 So. 2d 931, 936 (Miss. 1992). If Southland had a duty to Brown not to deposit its construction residue in the wooded area, that duty must be based on the proposition that Brown's subsequent injury was a reasonably anticipated consequence of the act.

In a more general sense, in order to sustain the verdict, this Court must conclude that the law placed on Southland an affirmative duty to so structure its activities that it did not create any situation where undiscerning children were exposed to objects which, if thrown or otherwise misused, were capable of producing bodily injury. Such a proposition tests the limits of foreseeability and attendant precautionary measures beyond the breaking point. With the aid of hindsight and an acknowledgment of the propensity of young children to engage in unwise activity, it would seem practically impossible to devise a plan of operation for any activity that would not render the actor susceptible to a charge of negligence when the undirected motor force of a young child intervenes and an injury occurs. The unpredictability of the behavior of unsupervised children in this age range demonstrates the practical futility of devising a course of conduct that would, in all situations, protect a group of active children from injuring themselves or others while engaged in inadvisable activity. Scrap lumber can be fashioned into play swords or spears, or simply used as a club. Anything of proper size can become a projectile to be hurled at another -- in play or in anger -- and if not the proper size, it may be appropriately modified into an injury inflicting projectile by the boundless, if often misdirected, energy of the young.

There is nothing inherently dangerous in the residue from a construction project such as the one with which we deal in this case. There is no evidence that the tile pieces, lying inert on the ground, created an unreasonable hazard. It was only through the intervention of Brown's companion, in retrieving the tile piece from the ground and sailing it in Brown's direction, that this tragic injury arose.

The law dealing with the duty to foresee the imprudent acts of others appears under the general rubric of the jurisprudence of "intervening cause." The action of Brown's companion was, without question, an intervening cause in the chain of events leading from Southland's choice of a method of trash disposal to Brown's injury. Nevertheless, this finding alone is not sufficient to render Southland's earlier activity non-actionable. The concept of intervening causes, and their effect on the liability of the more remote actor, has been a source of some difficulty in the law.

> On its face, the problem is one of whether the defendant is to be held liable for an injury to which the defendant has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which the defendant is not responsible.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44 (5th ed. 1984).

The difficulty appears to be in determining whether "the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances." *Id*. Thus, under principles of "foreseeability," a defendant may be held liable for his failure to anticipate an easily-predicted intervening cause and to properly guard against it.

The Second Restatement of Torts has attempted to draw the dividing line by shielding a defendant from liability if the intervening force can be classed as a "superseding cause." *See* Restatement (Second) of Torts § 440 (1965 ). The Restatement defines a superseding cause as follows:

A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

*Id.*

The Restatement sets out six factors to consider in determining whether a particular intervening force can be fairly classed as a superseding cause:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.*

A fair analysis of these factors would seem to require a finding that the act of Brown's play companion was a superseding cause under the Restatement (the parenthetical letter references (a) through (f) that follow correspond to the six Restatement considerations quoted above): (a) The only possible harm the tiles could have caused, but for the intervening act, would have been to cause some injury if someone inadvertently tripped over the objects or fell onto the pile of residue. The likelihood of this producing any significant injury must be seen as minimal. (b) Only hindsight makes this accident anything other than an extraordinary event. There is no suggestion in the evidence that Southland's agents were aware of the habits of these children to regularly engage in such hazardous activities. The mere fact that children may have frequented the wooded area does not necessarily convey the corresponding information that they regularly engage in highly dangerous activities once there. In fact, common experience would suggest that children of this age, even in unsupervised play, rarely inflict purposeful injury on one another. (c) The decision of Brown's companion to sail a piece of the floor tile certainly operated independently of Southland's action of depositing the construction residue where it did. (d) Brown's play companion was a third person unrelated in any way to Southland, and for whose negligent acts Southland bore no legal responsibility. (e) Brown's companion's act of throwing the tile was certainly "wrongful," whether done purposely to strike Brown or with reckless indifference for the consequences of throwing in his direction. The evidence at trial showed that all the children were aware of the dangers of the game of "War." As a result, they purposely confined the game to the wooded area where they could play undetected by their parents. Their appreciation of the dangers is also shown by the fact that they had a rule to avoid purposely striking anyone with a projectile above the

waist. The thrower of the tile piece was either ten or eleven years old at the time and was subject to a claim of liability for his tortious act. *See* Restatement (Second) of Torts § 895I (1979). (f) The final factor under the Restatement, the degree of culpability of the thrower, is somewhat more difficult to assess. The act does not seem to rise to the level of criminal culpability. It appears more properly classed as a foolhardy act than a malicious one. Nevertheless, in view of the fact that it was an act exposing the thrower to civil liability and in view of the fact that the children were well aware of the hazardous nature of their play, there must be some measure of blameworthiness attached to the act of throwing the tile fragment. We conclude, therefore, that all six of the Restatement factors weigh heavily against Brown in this matter.

In the case of *Glassey v. Worcester Consolidated St. Ry. Co.*, 70 N.E. 199 (1904), the Massachusetts court dealt with a situation where a number of children on their way home from school found a large reel left on the side of the road by a railroad company. The children dragged the reel into the road and rolled it down a hill, where it struck and injured the plaintiff. The plaintiff sued the railroad company, claiming it was negligent in leaving the reel in the path of the schoolchildren, given the propensity of children for mischief. *Id.* at 200. That court concluded that the events necessary to create the plaintiff's injuries required the exact coordination of too many factors to be reasonably classed as "foreseeable" by any reasonable interpretation of the phrase.

> In other words, in order to render the defendant liable, it must appear not only that it should have anticipated that, in the ordinary course of events, school children would take the reel from the position where it had been securely left, outside the traveled part of the road, but that they would set it in motion on the highway under such circumstances that it was liable to injure a traveler thereon. It seems to us that, conceding that there was evidence of negligence on the part of the defendant in leaving the reel where its servants did, they could not be required to anticipate that this would happen in the ordinary course of events, and therefore that the negligence was too remote.

*Id*.

The Court of Appeals of New York considered a case where a boy of eight in a public park threw a handful of rocks containing a glass shard and struck a play companion in the eye. *Clark v. City of Buffalo*, 41 N.E. 2d 459 (N.Y. 1942). The claim in that case was that the City was negligent in permitting concessionaires to sell glass-bottled drinks and then failing to remove the inevitable discarded and broken bottles. *Id.* at 460. The court, in reversing a jury verdict for the plaintiff, stated:

> True it is that among missiles picked up by the boy and thrown toward the plaintiff was the piece of thin glass hardly more than an inch square which struck the plaintiff's eye. But that small piece of glass, when on the ground inert, was not inherently dangerous. Had it been permitted to remain there the plaintiff would not have suffered the injury which befell her. She was subjected to no harm from the glass until it was picked up and thrown. Harm came to the plaintiff only after danger was created by the intervention of a third person, a mischievous boy, who on the impulse of the moment of which no prior conduct on his part or by the plaintiff gave warning picked up stones and glass and threw them toward the plaintiff and her companions.

*Id.* at 461.

We find these two cases strikingly similar to the situation now facing our Court, and we also find the reasoning of the Massachusetts and New York courts persuasive on the issue of lack of foreseeability.

This Court declines to impose upon Southland a duty to reasonably foresee that these inert tile scraps, unlikely to produce any serious injury in the state in which they were left, would be appropriated by a child, thoughtless of the risk he was taking, and propelled by that child at a high rate of speed toward the plaintiff, Paul Brown. It was the act of the child in throwing the tile piece that proximately caused Brown's injury and not the remote act of disposing of construction residue. There is no principled basis to find actionable negligence on the part of Southland in this case. This verdict must, therefore, be reversed. Because we conclude that the evidence could not support a finding of negligence as a matter of law, we reverse and render.

THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED. COSTS ARE ASSESSED AGAINST THE APPELLEE.

BRIDGES, C.J., THOMAS, P.J., COLEMAN, HINKEBEIN, AND SOUTHWICK, JJ., CONCUR. PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, HERRING, AND KING, JJ.

### SULLIVAN, PRESIDING JUSTICE, DISSENTING:

¶3. The majority affirms the decision of the Court of Appeals which stated "[i]f Southland had a duty to Brown not to deposit its construction residue in the wooded area, that duty must be based on the proposition that Brown's subsequent injury was a reasonably anticipated consequence of the act." With this statement, I agree. However, it is with the majority's conclusion-- that Southland could not have anticipated the resulting injury to Brown that I must disagree.

¶4. Testimony at trial revealed the wooded area where Brown was injured was frequently used by children in the apartment complex as a play area. Residents of the complex, some of whom had lived there for ten or more years, testified that the wooded area had been a well-known play area for as long as they could remember and that years of play had left well-worn paths throughout the area. Southland must have been aware that the wooded area was frequently used by children as a play area. In fact, the very rules imposed by Southland which prohibited children from playing on the grassy areas on the apartment grounds contributed to the displacement of the children to the wooded area.

¶5. Yet, Southland deposited the tile pieces near a clearly visible and well-worn pathway leading from the complex into the woods. I agree with the conclusion Judge Payne reaches in her dissent,"[f]or Southland to purposefully forego proper disposal of the tile in a nearby dumpster and travel down one of the well-worn

paths leading into the woods to dump sharply-pointed building residue in the middle of a well-known children's play area makes Southland undeniably negligent and liable regardless of Willie Esco's actions."

¶6. This Court has long recognized that an intervening cause will not relieve the original negligence if the intervening act could have or should have been anticipated. *See Touche Ross & Co. v. Commercial Union Ins. Co.*, 514 So. 2d 315, 323 (Miss. 1987) ("[A]ctionable fault must be predicated upon action or inaction, prompted by knowledge, actual or implied, of facts which make the result of the defendant's conduct not only the probable result but also a result which the defendant should, in view of the facts, have reason to anticipate."); *Ford Motor Co. v. Matthews*, 291 So. 2d 169, 176 (Miss. 1974) ("It is therefore said that the defendant is to be held liable if , but only if, the intervening cause is foreseeable.")(quoting Prosser, Law of Torts § 44, at 272 (1971)); *Canton Broiler Farms, Inc. v. Warren*, 214 So. 2d 671, 676-77 (Miss. 1968) ("[I]f foreseeable, the subsequent negligence is not independent and intervening, but is concurrent with the prior negligence."); *Meridian Hatcheries Inc. v. Troutman*, 230 Miss. 493, 509, 93 So. 2d 472, 476 (1957) ("We believe the rule to be that where the act of a third party, even if it is negligent, intervenes between the original negligence of defendant and the injury, there is proximate cause if, under the circumstances, an ordinarily prudent man could or should have anticipated that such intervening act, or a similar intervening act, would occur."); *Billups Petroleum Co. v. Entrekin*, 209 Miss. 302, 313, 46 So. 2d 781, 784 (1950) ("It is no defense that the liability is seen to extend beyond the risk. . . . The test is not always whether an intervening or activating cause is foreseeable if it be not unforeseeable.").

¶7. In the present case, the jury heard the testimony as presented by both sides. The jury was instructed on all applicable aspects of negligence law including proximate causes and intervening, superseding causes. The question of foreseeability was properly left for the jury, *Canton Broiler Farms, Inc.*, 214 So. 2d at 677-78, and the jury returned a verdict in favor of Paul Brown. I can find no reason to disturb this verdict.

**BANKS, McRAE AND WALLER, JJ., JOIN THIS OPINION.**