LEE, C.J., for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Larry Bullock was admitted to Wesley Medical Center in Hattiesburg, Mississippi, for neck surgery. Within twelve hours of being discharged from the hospital, a hematoma developed in Larry’s neck, and he died from constriction of his airway. Larry’s wife, Shirley Bullock, filed a suit in the Jefferson Davis County Circuit Court alleging negligence against Dr. Michael Patterson, an employee of Southern Bone & Joint Specialists, P.A.; Wesley Medical Center (Wesley) and certain mem
 
 *1260
 
 bers of its staff; and other parties who have since been dismissed.
 

 ¶ 2. Dr. Patterson filed a motion to exclude the testimony of Shirley’s proposed expert and a motion for summary judgment. Wesley also filed a motion for summary judgment. The trial court granted both motions for summary judgment, finding that Shirley failed to prove causation. Shirley then filed a motion to reconsider, which was denied by the trial court.
 

 ¶ 3. Shirley now appeals, arguing the following issues: (1) the trial court erred in granting summary judgment in favor of Dr. Patterson and Southern Bone & Joint Specialists; and (2) the trial court erred in granting summary judgment in favor of Wesley. Finding no error, we affirm.
 

 FACTS
 

 ¶ 4. After suffering a heart attack in 2003, Larry received a stent and was prescribed Plavix, an anticoagulant that works to inhibit blood clots in stent patients. In 2007, Larry was admitted to Wesley for neck surgery unrelated to his heart condition. Dr. Patterson performed the surgery. The day before surgery, Dr. Patterson stopped Larry from taking Plavix. The day of the surgery, ten units of platelets were administered to reverse the effects of the Plavix. After the surgery, Dr. Patterson verbally advised Larry to withhold Plavix for two days. However, Dr. Kurt Bruckmeier, an internist at Wesley, made the final decision regarding Larry’s home medications. Dr. Bruckmeier instructed Larry to resume taking Plavix the next day following his hospital discharge. Nurse Martha Kerr instructed the Bullocks at discharge and gave them the medication sheet prepared by Dr. Bruckmeier. The Bullocks were told to notify a physician of any complications.
 

 ¶ 5. The evening after Larry returned home he began having shortness of breath. Larry told Shirley that he needed to go to the emergency room. Shirley testified that Larry complained of difficulty swallowing, choking, and feeling like his throat was “closing off.” She testified that his neck was visibly swollen. Shirley immediately drove Larry to the nearest hospital, Jefferson Davis Community Hospital/Prentiss Regional Medical Center. Dr. James Locke examined Larry. Dr. Locke ordered that Larry be transported by ambulance back to Wesley. En route, Larry’s airway continued to become more restricted. The ambulance personnel attempted to intubate Larry, but were unsuccessful. Realizing Larry would not make it to Wesley in the ambulance, they decided to transfer him to Wesley by helicopter. The ambulance met the helicopter in Sumrall, Mississippi. The flight crew successfully intubated Larry. However, Larry was pronounced dead upon arrival at Wesley.
 

 STANDARD OF REVIEW
 

 ¶ 6. In reviewing a lower court’s grant of summary judgment, this Court employs a de novo standard of review.
 
 Anglado v. Leaf River Forest Prods.,
 
 716 So.2d 543, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the evidence before the lower court in the light most favorable to the non-moving party.
 
 Palmer v. Anderson Infirmary Benevolent Ass’n,
 
 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there
 
 *1261
 
 is a genuine issue for trial.” M.R.C.P. 56(e).
 

 DISCUSSION
 

 I. DR. PATTERSON AND SOUTHERN BONE & JOINT
 

 ¶ 7. Shirley argues that genuine issues of material fact exist regarding the negligence of Larry’s orthopedic surgeon, Dr. Patterson, such that summary judgment was not appropriate.
 

 ¶ 8. First, Shirley claims that Dr. Patterson told Larry the neck surgery was necessary because a minor accident could result in paralysis. Shirley’s expert, Dr. Raymond Vance, testified that Larry’s condition was not so urgent that he needed surgery the next day. Thus, Shirley argues Dr. Patterson was negligent in his recommendation for surgery. Second, Shirley argues that Dr. Patterson deviated from the standard of care in failing to discontinue Larry’s use of Plavix for five to seven days before surgery. Further, she alleges that Dr. Patterson was negligent in his instructions regarding when Larry should resume taking Plavix.
 

 ¶ 9. Dr. Vance testified that Dr. Patterson should have postponed Larry’s surgery for seven days while Larry ceased taking Plavix and the failure to wean Larry from Plavix was a deviation from the standard of care. However, Dr. Vance went on to state that the administration of the ten units of platelets prior to surgery was effective in reversing the effects of the Plavix that Larry had taken prior to the surgery and that no damage was caused by the decision to proceed with the surgery. Dr. Vance testified that at the time of discharge, approximately sixteen hours after surgery, Larry was stable both he-modynamically and with regard to coagula-bility.
 

 ¶ 10. With regard to the resumption of Plavix, Dr. Patterson submitted an affidavit which stated that he typically relies “upon Dr. Bruckmeier’s experience as an internist and defer[s] to Dr. Bruckmeier on the timing of a patient’s resumption of his/her home medications.” Dr. Patterson consulted with Dr. Bruckmeier prior to Larry’s discharge. Dr. Bruckmeier instructed Larry to resume Plavix the day after discharge to avoid the risk of blood clots or stroke. When asked his expert opinion on the administration of Plavix, Dr. Vance testified that this was outside his area of expertise. Dr. Vance opined that Dr. Patterson deviated from the standard of care by not consulting with Larry’s cardiologist about the resumption of Plavix after surgery. However, he testified that he could not give an opinion as to whether the timing of the resumption of Plavix as ordered was a deviation from the standard of care in light of Larry’s cardiac history.
 

 ¶ 11. To establish a prima facie case of medical malpractice, the plaintiff must show that:
 

 (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant’s breach of duty was a proximate cause of the plaintiffs injury, and; (4) the plaintiff was injured as a result.
 

 Delta Reg’l Med. Ctr. v. Venton,
 
 964 So.2d 500, 504 (¶ 8) (Miss.2007). The “general rule is that medical negligence may be established only by expert medical testimony, with an exception for instances where a layman can observe and understand the negligence as a matter of common sense and practical experience.”
 
 Coleman v. Rice,
 
 706 So.2d 696, 698 (¶ 10) (Miss.1997) (citations omitted). “The success of a plaintiff in establishing a case of medical malpractice rests heavily on the shoulders of the plaintiffs selected medical expert. The expert must articulate an ob
 
 *1262
 
 jective standard of care.”
 
 Estate of Northrop v. Hutto,
 
 9 So.3d 381, 384 (¶ 10) (Miss.2009). “Not only must [an] expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.”
 
 McDonald v. Mem’l Hosp. at Gulfport, 8
 
 So.3d 175, 180 (¶ 12) (Miss.2009) (quoting
 
 Barner v. Gorman,
 
 605 So.2d 805, 809 (Miss.1992)).
 

 ¶ 12. The expert testimony presented by Shirley failed to show that any alleged breach of duty on behalf of Dr. Patterson was the proximate cause of Larry’s death. When questioned on the matter, Shirley testified that she could not remember whether or not Dr. Patterson gave Larry any instructions regarding Plavix. Further, no evidence was presented that Dr. Patterson’s recommendation regarding the use or non-use of Plavix contributed to Larry’s death. On the contrary, Dr. Richard Douglas Zane, an emergency-medicine physician, testified for the plaintiffs that Larry died because Dr. Locke deviated from the standard of care in not assessing Larry’s airway at Jefferson Davis Community Hospital. Dr. Zane opined that Dr. Locke acted negligently in transferring Larry by ambulance without first intubat-ing him to protect his airway. Dr. Zane testified that if Larry would have been intubated in the ambulance within the first few minutes of its departure, as Larry himself requested, then Larry would have survived.
 

 ¶ 13. We find that this issue is without merit.
 

 II. WESLEY
 

 ¶ 14. Shirley claims that Dr. Bruckmeier and Nurse Kerr, employees of Wesley, were negligent in their treatment of Larry. Specifically, she alleges that Dr. Bruckmeier deviated from the standard of care in recommending that Larry resume taking Plavix. Nurse Kerr gave the Bullocks instructions at discharge which stated that Larry should avoid lifting, bending, neck flexing, and head turning. She also instructed that the Bullocks should keep the incision clean and dry, with a light dressing, and notify a physician if Larry experienced any numbness, tingling, fever, or any worsening condition. Shirley argues that Nurse Kerr deviated from the standard of care in her involvement with the home medication and failed to give proper discharge instructions.
 

 ¶ 15. Shirley bore the burden of proving that Dr. Bruckmeier’s or Nurse Kerr’s actions were the proximate cause of Larry’s injuries. Shirley’s expert, Dr. Vance, testified that Dr. Bruckmeier deviated from the standard of care by failing to consult a cardiologist before recommending that Larry resume taking Plavix. However, Dr. Vance also testified that he was not a cardiologist or an expert in that field.
 

 ¶ 16. As to the actions of Nurse Kerr, Shirley argues that she would have taken Larry to the emergency room sooner if she had received proper discharge instructions after Larry’s surgery. However, Shirley testified that she took Larry to the emergency room immediately when he began to have trouble breathing. Shirley alleges no other wrong doing on the part of Nurse Kerr that was connected with Larry’s death. Shirley’s own expert, Dr. Zane, testified that “had Mr. Bullock been intu-bated by Dr. Lock[e], I do not believe he would have passed away.”
 

 ¶ 17. “The law dealing with the duty to foresee the imprudent acts of others appears under the general rubric of the jurisprudence of ‘intervening cause.’ ”
 
 Southland Mgmt. Co. v. Brown ex rel. Brown,
 
 730 So.2d 43, 46 (Miss.1998). In
 
 Southland,
 
 the Mississippi Supreme Court
 
 *1263
 
 cited the Second Restatement of Torts, which defines a superseding cause as “an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.”
 
 Id.
 
 (citing Restatement (Second) of Torts § 440 (1965)). Under this theory, an original actor’s negligence may be superseded by a subsequent actor’s negligence, if the subsequent negligence was unforeseeable.
 
 Southland Mgmt. Co.,
 
 730 So.2d at 46 (Append. A).
 

 ¶ 18. We find that the actions taken the day after Larry’s surgery were superseding intervening causes of his death. The evidence showed that, regardless of the actions surrounding Larry’s initial surgery, the actions of Dr. Locke and the ambulance personnel were superseding intervening causes of Larry’s death. No evidence was presented that the actions of Dr. Patterson, Dr. Bruckmeier, or Nurse Kerr amounted to a prima facie case of medical malpractice. This issue is without merit.
 

 ¶ 19. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 IRVING AND GRIFFIS, P. JJ., MYERS, ISHEE, CARLTON AND RUSSELL, JJ., CONCUR. BARNES, ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.