# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01284-COA

LESLIE SMITH, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
MARCUS D. SMITH

APPELLANT

v.

ROSALINDE MINIER, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
INGEBORG STEINER, AND WERNER
ENTERPRISES, INC.

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2021 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TIMOTHY MICHAEL O'BRIEN |
| ATTORNEYS FOR APPELLEES: | DAVID C. DUNBAR |
| | GLENN F. BECKHAM |
| | CHRISTOPHER G. DUNNELLS |
| | LAUREN T. CARPENTER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 03/07/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.   Marcus Smith (Marcus) died of acute liver failure after being involved in a double-vehicle accident causing him neck and back pain.  Afterward, his widow Leslie Smith (Smith) filed a wrongful death complaint individually and as a representative of his estate. The Defendants filed a joint motion for partial summary judgment, which the trial court granted and then dismissed Smith's wrongful death claim against all the Defendants.  After review of the trial court's decision, we reverse and remand.

**FACTS**

¶2.     On April 2, 2013, Charles Emslie was driving eastbound in a tractor-trailer, owned by Landstar Ranger Inc. (Landstar), on Interstate 10 in Jackson County, Mississippi, when he drove into a fog that hindered his visibility and made him slow down. After receiving a report about the fog through the radio, Emslie tried to pull off the road. Unfortunately, before Emslie could transition to the right shoulder of the interstate, he felt a vehicle strike his truck in the rear. Ingeborg Steiner,[1] driving a 2007 Buick van, was the driver of the vehicle that struck Emslie's truck and caused it to roll over and block the left eastbound lane.

¶3.     Around midnight, Marcus, on behalf of MDV Nash Finch (MDV), was also traveling east when he saw the fog. Driving in the left lane, he unsuspectingly came upon the aftermath of Emslie and Steiner's collision. In his attempt to avoid the collision, he swerved but eventually lost control of the truck he was driving.

¶4.     Randy Roy Sharp, who also worked for MDV, was sleeping in the back cot when Marcus began swerving. At that time, the truck traveled across the median, overturned, and did not stop until it reached the westbound lane. After a moment, Sharp and Marcus attempted to get out of the truck. They ultimately did not have time because less than a minute later, another tractor-trailer crashed into Marcus' rig.

¶5.     Daniel Mitchell III, who was driving for Werner Enterprises Inc., passed by the

_____

[1] Steiner died during the proceedings and is now represented by Rosalinde Minier, the personal representative of Steiner's estate.

Pascagoula and Moss Point exits on Interstate 10. After passing the exits, Mitchell realized that he was no longer able to see the side of the road. He started slowing down to get off the highway. The parties dispute how fast Mitchell was driving at the time. In any event, Mitchell then saw a "jackknifed" trailer blocking the road. Mitchell attempted to swerve around the trailer. Mitchell slammed on his brakes, but his trailer would not stop moving. Consequently, Mitchell crashed into Marcus' rig. Thereafter, Mitchell called his safety dispatcher and reported the incident.

¶6.     The ambulance arrived and took Marcus to Singing River Hospital in Pascagoula, Mississippi. While in the emergency room, Marcus complained of neck and back pain to the emergency room physician. In response, Singing River subjected Marcus to a computed tomography (CT)[2] scan. The emergency physician requested a consult from the neurosurgeon, Dr. Kesterson, who then reviewed Marcus' CT scan and concluded that Marcus suffered from a Hangman's Fracture.[3]

¶7.     When Smith arrived at Singing River, she was told that Marcus had a neck injury and pain on the right side of his chest. Dr. Kesterson prescribed Marcus a pain medication called Lortab, which is a combination pill consisting of hydrocodone (an opioid) and acetaminophen, namely Tylenol. That same day, Marcus was discharged from Singing River,

---

[2] Dr. Kesterson stated that "[a] CT, computed tomography, is an imaging technique" used "to demonstrate anatomical structures."

[3] According to Dr. Kesterson, it is "a fracture occurring in the pedicle structures, which are some of the side structures of typically C2."

3

and went home to Pensacola, Florida.

¶8.    Smith retrieved a fifty-six-quantity supply of Marcus' Lortab prescription from the Winn-Dixie pharmacy on April 3, 2013. When Dr. Kesterson was asked about the scheduled dosage he prescribed to Marcus, he stated that he prescribed for Marcus to take the medication "every six hours as needed." Dr. Kesterson further stated that "it was not a scheduled dosing, but just to take it if he feels like he needs some pain relief." But Smith's expert witness Dr. Neil Julie later testified that the prescription, as written on Marcus' medical chart, directed that Marcus be given "one to two tablets every four hours." Marcus' discharge summary directed Marcus to take "one tablet every six hours." Smith stated that she followed "the prescription from the bottle and did what the bottle said," which was "two tablets every six hours." Within six days, Smith was at home dialing 911 because her husband became "combative" and had blood in his urine. It is disputed whether Marcus took eight pills a day or approximately ten or eleven pills a day. Smith told the emergency responders that the entirety of the fifty-six-quantity supply was "gone." Smith also said that Dr. Kesterson never told her how many Lortab pills per day she needed to give to Marcus. Smith further stated that none of the doctors provided her with a maximum amount to give Marcus within twenty-four hours either. Responding to the call, Pensacola Escambia EMS arrived in an ambulance and drove Marcus to Sacred Heart Hospital. While at Sacred Heart, Marcus presented as having "acute fulminant liver failure secondary to Tylenol toxicity." Sacred Heart kept Marcus for "over the course of approximately [one] week" and eventually

4

stabilized him. During this time, the doctors at Sacred Heart discovered that Marcus suffered rib fractures from the vehicular accident, in addition to his neck and back injuries. Once discharged, Smith retrieved Marcus' second-quantity supply of Marcus' hydrocodone prescription. The initial prescription was for 120 pills.

¶9. Four days later, Marcus returned to Sacred Heart. At this time, the doctors at Sacred Heart performed a liver biopsy. The biopsy showed Marcus as having "steatosis" and "secrosis," which indicated "acute Tylenol toxicity with liver failure." Again, Sacred Heart commenced with treatment and stabilized Marcus' liver. He was discharged on May 7, 2013.

¶10. A few months later, Marcus went to the University of Alabama at Birmingham Hospital (UAB). The UAB autopsy report later stated that on August 17, 2013, Marcus was, again, "combative," among other things. The autopsy report also stated that Marcus developed acute respiratory failure. Regrettably, however, the professionals at UAB were unable to prevent Marcus' death. On September 24, 2013, Marcus died as a result of acute chronic liver failure.

## PROCEDURAL HISTORY

¶11. This wrongful death action began on September 8, 2015, as a result of Smith's filing a complaint requesting damages for pain and suffering on the basis of negligence and personal injury[4] against Emslie, Landstar, Steiner, Mitchell, Werner, and Progressive American Insurance Company (collectively "Defendants") in Jackson County, Mississippi.

---

[4] Smith's personal-injury claim was settled outside of court.

5

Smith alleged that Emslie was negligent because he drove below the minimum speed limit and failed to use due care when slowing down and that Landstar was vicariously liable for Emslie's actions. Smith next alleged that Steiner acted negligently because she failed to yield, drove too fast during a fog, and drove while intoxicated. Additionally, Smith alleged that Mitchell acted negligently by failing to slow down during a severe weather condition, which led to his collision with Marcus' rig. Smith then alleged that Werner was vicariously liable for Mitchell's actions. Finally, Smith demanded that Progressive pay compensatory damages as Marcus' insurer.

¶12. The Defendants timely answered Smith's complaint. During an exhaustive discovery process, which had not yet been completed, the Defendants jointly moved for partial summary judgment as to Smith's wrongful death claim. The trial court held the summary judgment hearing on April 26, 2018, and granted the Defendants' motion for partial summary judgment. The trial court also dismissed Smith's claim for relief due to pain and suffering.

¶13. Smith petitioned for interlocutory review to the Mississippi Supreme Court on July 10, 2018. On October 25, 2018, in a 5-4 en banc decision, our supreme court denied the petition for interlocutory review.[5] On April 30, 2021, Smith moved for the trial court to reconsider its partial summary judgment order. On May 24, 2021, the Defendants requested the court to deny Smith's motion for reconsideration. On October 21, 2021, the trial court entered its final judgment in favor of the Defendants. Smith appeals from the trial court's

---

[5] Order, *Smith v. Minier*, No. 2018-M-00987-SCT (Miss. Oct. 25, 2018).

6

final judgment.

¶14. During the above proceedings, the trial court dismissed Progressive.[6] Next, the trial court dismissed defendants Landstar and Emslie from the action due to their having settled their disputes with Smith outside of litigation. Later, the trial court dismissed Mitchell from the suit as agreed to by the parties. The remaining defendants are Steiner and Werner.

## STANDARD OF REVIEW

¶15. "This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it—admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *McCary v. Wade*, 861 So. 2d 358, 360 (¶6) (Miss. Ct. App. 2003); *Owens v. Brooks*, 321 So. 3d 1202, 1204 (¶4) (Miss. Ct. App. 2021).

## DISCUSSION

¶16. Smith argues that the trial court's grant of partial summary judgment in favor of the Defendants should be reversed because (1) the trial court applied the incorrect foreseeability (legal cause) standard; (2) a genuine issue of material fact exists as to foreseeability; and (3) Marcus' use of pain medication was not an intervening cause.

¶17. The trial court must grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there

---

[6] According to the docket text, the trial court entered a "Judgment of Dismissal" as to Progressive with prejudice on November 11, 2016.

7

is no genuine issue as to any material fact . . . ." M.R.C.P. 56(c). "A fact is material if it tends to resolve any of the issues properly raised by the parties." *Simpson v. Boyd*, 880 So. 2d 1047, 1050 (¶9) (Miss. 2004) (internal quotation marks omitted).

¶18. "To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim." *Sharrief v. DBA Automotive Two LLC*, 242 So. 3d 944, 947 (¶9) (Miss. Ct. App. 2018). The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *Moreland v. Kimes & Stone Const. Co.*, 900 So. 2d 377, 378 (¶3) (Miss. Ct. App. 2004). "[W]hen doubt exists whether there is a fact issue, the non-moving party gets its benefit." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1275 (¶22) (Miss. 2007). "Furthermore, a motion for summary judgment should be overruled unless the trial court finds, beyond a reasonable doubt, that the plaintiff would be unable to prove any facts to support his claim." *Simpson*, 880 So. 2d at 1050 (¶10).

¶19. Smith brought this wrongful death action[7] on the basis of negligence. To succeed on a negligence claim, a plaintiff must show the following five elements: (1) duty, (2) breach, (3) cause in fact, (4) legal cause, and (5) damages. *See Sanderson Farms Inc. v. McCullough*,

---

[7] A wrongful death action "may be maintained or asserted for strict liability in tort or for any cause of action known to the law for which any person, corporation, legal representative or entity would be liable for damages if death had not ensued. In an action brought pursuant to the provisions of this section by the widow . . . such party . . . may recover as damages . . . or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty . . . ." Miss. Code Ann. § 11-7-13 (Rev. 2013).

8

212 So. 3d 69, 76 (¶17) (Miss. 2017). Our Mississippi courts have at times condensed these five elements to four by combining the cause in fact and legal cause elements. *Entrican v. Ming*, 962 So. 2d 28, 32 (¶¶11-12) (Miss. 2007); *Sanderson*, 212 So. 3d at 76 (¶17) (listing four essential elements and adding that a plaintiff must further show "a causal connection between the breach and the injury, such that the breach is the proximate cause of the injury"). But, "in reality, there are five elements." Robert A. Weems & Robert M. Weems, Mississippi Law of Torts § 3:1, at 32 (2d ed. 2008).

¶20.    In addition, we have sometimes been inconsistent in our use of the term "proximate cause."[8] In some instances, our Mississippi courts have referred to "proximate cause" as both cause in fact and legal cause. *See, e.g.*, *Bennett v. Highland Park Apts. LLC*, 170 So. 3d 522,

---

[8] To that end, our courts' descriptions of "proximate cause" as encompassing both cause in fact and legal cause have attributed to some difficulty in developing a uniform understanding partly because the two-word phrase defines itself (i.e., a cause that is proximate). *See* 6 Jeffrey Jackson et al., *Encyclopedia of Mississippi Law* § 52:19 (2d ed. updated Oct. 2022) ("Courts and commentators at times use legal cause as the umbrella term encompassing factual and proximate cause; at others employ legal cause and proximate cause as synonyms; and still others explain that proximate cause is the umbrella term."); Weems, *supra* ¶19, § 3:17, at 45-46 ("In discussing the element of causation, it must first be noted that the term 'proximate cause' is sometimes used when the court is referring to cause-in-fact, often when the court is referring to legal cause, and frequently when the court is referring to both."); Restatement (Second) of Torts § 281 (1965) (commenting that "[m]ost of the decisions before the Palsgraf Case treated the issue as one of 'proximate' or legal causation" (referencing *Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (N.Y. 1928))); William Prosser & W. Page Keeton, Law of Torts, at 272-73 (5th ed. 1993) (describing "proximate cause" as an unfortunate term because the word proximate "means nothing more than near or immediate," and therefore "'legal cause' or perhaps even 'responsible cause' would be a more appropriate term"); *accord Funches v. Progressive Tractor & Implement Co.*, 905 F.3d 846, 851 n.3 (5th Cir. 2018) (applying Mississippi law).

527 (¶16) (Miss. Ct. App. 2014) ("[T]here are two elements to proximate cause: legal cause and cause in fact."); *Glover*, 968 So. 2d at 1277 (¶31); *Trigg v. Farese*, 266 So. 3d 611, 621 (¶25) (Miss. 2018); *Huynh v. Phillips*, 95 So. 3d 1259, 1263 (¶12) (Miss. 2012). Other times, such as in our medical malpractice cases, our courts have referred to "proximate cause" as legal cause, alone. *Gulfport OB-GYN, P.A. v. Dukes, Dukes, Keating & Faneca P.A.*, 283 So. 3d 676, 679 (¶6) (Miss. 2019) ("Under Mississippi law, causation has two aspects: the alleged negligent conduct must be shown to have caused the injury, in fact, and it must be shown to be the injury's legal or proximate cause."); *Smith v. Hardy Wilson Mem'l Hosp.*, 300 So. 3d 991, 997 (¶17) (Miss. 2020) (citing *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 529 (Miss. 2019)); *Rebuild Am. Inc. v. Johnson*, 99 So. 3d 1154, 1158 (¶10) (Miss. Ct. App. 2010); *see also City of Jackson v. Law*, 65 So. 3d 821, 834 (¶53) (Miss. 2011) ("This Court found that, while the bus driver was a cause-in-fact of the woman's injury, the bus driver was not the *legal or proximate cause*, because her injury was not foreseeable." (emphasis added)) (citing *City of Jackson v. Est. of Stewart*, 908 So. 2d 703, 715 (Miss. 2005)); *S. Heritage Ins. Co. v. C.E. Frazier Const. Co.*, 809 So. 2d 668, 670 (¶6) (Miss. 2002).

¶21.    To remove any ambiguity, we state that causation has two separate elements. *See Gulfport OB-GYN*, 283 So. 3d at 679 (¶6). Those two elements are (1) but-for causation (or cause in fact) and (2) proximate causation (or legal cause), which includes foreseeability.[9]

---

[9] Secondary sources explain that "proximate cause" is "legal cause." *See, e.g.*, Black's Law Dictionary 276 (11th ed. 2019) (defining "proximate cause" as "[a] cause that is legally

*Bennett*, 170 So. 3d at 527 (¶16) (To prove cause in fact, the plaintiff must show that "but for the defendant's negligence, the injury would not have occurred."); *Huynh*, 95 So. 3d at 1263 (¶12) (To prove legal cause, the plaintiff must show that the injury "is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act."). And a plaintiff must make a prima facie case of both elements. *Holmes v. Campbell Props. Inc.*, 47 So. 3d 721, 724 (¶10) (Miss. Ct. App. 2010). Furthermore, "the cause in fact of an injury is 'that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred.'" *Glover*, 968 So. 2d at 1277 (¶32) (quoting *Gulledge v. Shaw*, 880 So. 2d 288, 293 (¶11) (Miss. 2004)). If a plaintiff establishes that the defendant's actions were the cause in fact of its injuries, then a plaintiff must establish the fourth element, legal causation. *Id*. at (¶31). "In any tort case, identifying and proving the source of the harm that proximately caused a plaintiff's injuries is essential." *Johnson & Johnson Inc. v. Fortenberry*, 234 So. 3d 381, 403 (¶78) (Miss. 2017); *Sharrieff v. DBA*

sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor" and noting that "proximate cause" is also termed "legal cause."). In addition, a portion of the *Mississippi Practice Series*, authored by Robert A. Weems and Robert M. Weems, states that "[i]n the 2005 decision of *City of Jackson v. Estate of Stewart*[, 908 So. 2d 703, 715 (Miss. 2005)], the Supreme Court considered the issue of proximate/legal causation in a case where a bus driver delivering an elderly woman to a daycare center left her unattended in the parking lot." Weems, *supra* ¶19, § 3:21, at 49. The Weemses have termed proximate cause as legal cause. Robert A. Weems & Robert M. Weems, Mississippi Law of Torts § 3-13, at 38 (2002) ("In the vast majority of cases where the defendant's negligent act has in fact caused the plaintiff's injury, there is no legal or proximate cause issue.").

*Automotive Two LLC*, 242 So. 3d 944, 947 (¶11) (Miss. Ct. App. 2018). A defendant's negligence is the legal cause of the injury if it "is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." *Glover*, 968 So. 2d at 1277 (¶33). In other words, foreseeability is an element of legal causation, and the damage to the plaintiff must fall within the zone of foreseeability that the actor reasonably should have known would result from its conduct. *Id.* Our supreme court explained that "one who negligently drives an automobile reasonably should foresee that his or her negligence could be expected to cause certain kinds or categories of damages. Such categories would of course include (among others) traumatic injury, medical bills, lost wages, and pain and suffering." *Id.* at 1278 (¶38). The *Glover* court further found that in the case of an automobile accident, the plaintiff need not prove that the defendant foresaw that "his or her negligence would lead to a broken leg or an MRI" because these damages are reasonably expected. *Id.* at 1278-79 (¶38).

¶22. Nevertheless, a defendant may defensively assert that his actions were not the proximate cause because a third party's actions or a third-party event "broke the chain of causation," absolving the defendant of any liability, as stated in *Entrican*:

> [I]f the act complained of is only a remote cause, superseded by an independent, efficient intervening cause that leads in unbroken sequence to the injury, the original negligent act is not a proximate, but a remote, cause. Thus, not being foreseeable, the original cause is not actionable.

*Entrican*, 962 So. 2d at 36 (¶25). However, if the intervening cause was foreseeable, then it is not superseding, and the defendant remains liable. *Glover*, 968 So. 2d at 1279 (¶43); *see*

12

*e.g.*, *Southland Mgmt. Co. v. Brown ex rel. Brown*, 730 So. 2d 43, 46-48 (Miss. 1998).

¶23.    In *Entrican*, our supreme court extensively discussed intervening cause:

> Under this theory, an original actor's negligence may be superceded by a subsequent actor's negligence, if the subsequent negligence was unforeseeable. *Southland Mgmt. Co.*, 730 So. 2d at 46. . . . This Court has held that if "the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances," the subsequent actor's negligence is foreseeable and does not break the chain of events between the negligence of the first actor and the injury. *Id.* (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44 (5th ed. 1984))[;]. . . . *See also Pargas of Taylorsville, Inc. v. Craft*, 249 So. 2d 403, 408 (Miss. 1971) (holding that a defendant is chargeable only with anticipating reasonable probabilities; therefore a person is not bound to anticipate the unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities . . .).

*Entrican*, 962 So. 2d at 35-36 (¶24). Therefore, in regard to foreseeability, whether an event is so unusual or improbable that it is unforeseeable by the negligent actor is a question of fact that should be left for the jury, as it turns on whether another person's actions constitute a superseding intervening cause that breaks the chain of causation. *Leflore County v. Givens*, 754 So. 2d 1223, 1225 (¶2) (Miss. 2000) ("Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite."), *overruled on other ground by Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815, 819-20 (¶22) (Miss. 2006).

¶24.    In this instance, when the Defendants jointly moved for partial summary judgment, the Defendants argued that Marcus' abuse of pain medication was unforeseeable. The Defendants stated that Marcus "did not take the medication as prescribed." In turn, the

13

Defendants argued that Marcus' liver failure "was not legally foreseeable to these Defendants, whether considering duty or causation."

¶25. Smith responded that Marcus' death directly resulted from the Defendants' actions and that it is a well-known fact that pain medication can lead to liver failure. Smith also stated that Marcus' use of pain medication "was not a superseding cause." The trial court granted partial summary judgment in favor of the Defendants stating Marcus' death was not "legally foreseeable to the Defendants as a proximate cause of an automobile accident, as it is an unusual, improbable, or extraordinary occurrence arising out of the same." On appeal, Smith has asserted that Werner's actions were the proximate cause of Marcus' injuries *and* that Marcus' actions were not an intervening cause. We address both, in turn.

## I. The foreseeability of the use of pain medication is a question of fact.

¶26. The foreseeability of Marcus' use of the pain medication is a genuine issue of material fact. The Defendants argue that Marcus abused his pain medication because Marcus took more pills than he should have when he emptied the fifty-six-quantity supply of Lortab within one week. Such action, the Defendants argue, was unforeseeable. But Smith's expert witness Dr. Julie testified how common it is for patients to inadvertently take more pain medication than they should, resulting in unintentional liver failure.

¶27. Moreover, the record reveals that Smith gave Marcus the pain medication as directed. Dr. Kesterson, when prescribing the medication, did not provide exact quantity limitations. Rather, Dr. Kesterson testified that he wrote on the prescription pad that Marcus should take

14

the pain medication "as needed." Additionally, there were allegedly three prescriptions: (1) the emergency room prescription; (2) Dr. Kesterson's prescription; and (3) the Winn-Dixie prescription written on the pill bottle. The prescription listed on the emergency room medical chart directed Marcus to take "one to two tablets every four hours;" whereas, Marcus' discharge summary directed Marcus to take "one tablet every six hours." But according to Smith, the prescription written on the pill bottle also instructed for Marcus to take two pills every six hours. Regardless of which prescription Marcus was given, Dr. Julie testified that Marcus would have had a similar injury whether taking eight pills per day or ten or eleven pills per day.

¶28. Based on the evidence presented, we conclude that the question on the foreseeability of "misuse," that is, whether Marcus misused the pain medication prescribed to him by Dr. Kesterson, is a question of fact for the jury to determine. In *Materials Transportation Co. v. Newman*, 656 So. 2d 1199 (Miss. 1999), the defendant alleged that "Newman's [(the plaintiff)] use of [the product] . . . [was] an unforeseeable misuse of the battery . . . ." *Id.* at 1202. Although held in the context of products liability, the Mississippi Supreme Court stated that "misuse" is a question of fact for the jury. *Id.* (citing *Early-Gary, Inc. v. Walters*, 294 So. 2d 181, 186 (Miss. 1974); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 289 (5th Cir. 1975)); *see* Miss. Code Ann. § 11-7-17 (Rev. 2019) ("All questions of negligence . . . shall be for the jury to determine."). Therefore, Marcus' use of pain medication and whether this action was an intervening or superseding cause is a genuine issue of material fact that

15

should have been resolved in favor of Smith because it was unclear whether Marcus intentionally took more pills than prescribed. *Glover*, 968 So. 2d at 1275 (¶22).

II. **Whether the liver failure was within the zone of foreseeability is a question of fact.**

¶29. A genuine issue of material fact exists as to the foreseeability of Marcus' death caused by liver failure. The Defendants argue that Marcus' use of pain medication that led to his liver failure was unforeseeable, and they rely on the testimony of neurosurgeon Dr. Kesterson for support. Dr. Kesterson testified that in his thirty years of medical experience, he had never known a patient to die from liver failure as a result of the ingestion of pain medication.

¶30. On the other hand, Smith presented expert testimony from Dr. Julie, a gastroenterologist. Dr. Julie attached Federal Drug Administration regulations to his sworn affidavit, which explained that liver failure resulting from pain medication has been known and addressed by the government for a very long time. Dr. Julie also testified that death due to ingestion of pain medication was not an uncommon experience and that in his expert opinion, Marcus' death was caused by his ingestion of pain medication prescribed to him. Smith argued that since liver failure from pain medication has been widely publicized, average truck drivers should have known that their negligent actions could lead to injuries that result in the taking of pain medication treatment, thereby resulting in death.

¶31. The trial court concluded that the circumstance—acute liver failure caused by pain medication—was so unusual and improbable that no truck driver could have anticipated it. The trial court relied on *Stewart* to reach its conclusion, citing *Stewart*, 908 So. 2d at 715

16

(¶60). However, what our supreme court actually held in *Stewart* that it was "[b]ecause the unchallenged expert testimony at trial established that [the deceased's] stroke [was] not a foreseeable consequence of the alleged negligence which led to Mrs. Stewart's fall" that the trial court declined to extend damages to the plaintiff. A subsequent opinion clarified this point, explaining that the holding in *Stewart* resulted from the lack of evidence to support causation in that case. *Spotlite Skating Rink Inc. v. Barnes ex rel. Barnes*, 988 So. 2d 364, 369 (¶15) (Miss. 2008); *see Stewart*, 908 So. 2d at 715 (¶63).

¶32.    In *Spotlite*, the defendant attempted to rely on *Stewart*, 908 So. 2d at 715 (¶63), to argue that the head trauma the plaintiff suffered was unforeseeable. *Spotlite*, 988 So. 2d at 369 (¶14). Distinguishing *Stewart*, our supreme court held that because "two medical experts testified that the head trauma caused Bianca's cyst," thus, "even if [the plaintiff's] death may not have been foreseeable, there was sufficient evidence that a fall resulting in a head injury was a reasonably foreseeable consequence . . . ." *Id*. at (¶15).

¶33.    In the instant case, Smith provided expert testimony relevant to the foreseeability of Marcus' liver failure. Although the trial court relied on *Stewart*, the court did not provide its findings of fact or conclusions of law for reaching its decision. And after a thorough review of the record, we find that Smith presented sufficient evidence to defeat the summary judgment. Liver failure caused by pain medication prescribed by a medical physician is not outside the zone of foreseeability of an automobile accident. Unlike a missed flight, as explained in *Glover*, liver failure is within the category of traumatic injury. *See Glover*, 968

17

So. 2d at 1279 (¶38).

¶34. In addition, whether the Defendants could have reasonably anticipated Marcus'
resulting death was also a question of fact for the jury. *Ready v. RWI Transp. LLC*, 203 So.
3d 590, 594 (¶9) (Miss. 2016) ("[C]ausation is generally a matter for the jury."); *Rein v.
Benchmark Const. Co.*, 865 So. 2d 1134, 1144 (¶30) (Miss. 2004). Without question, our
appellate holdings declare that an injury is foreseeable when "by the usual course of events,
some injury, not necessarily the particular injury, or injury received in the particular manner
complained of, would result therefrom . . . ." *Cumberland Tel. & Tel. Co. v. Wooham*, 99
Miss. 318, 54 So. 890, 891 (1911); *see Planters Wholesale Grocery v. Kincade*, 210 Miss.
712, 50 So. 2d 578, 582 (1951); *Gulledge*, 880 So. 2d at 293 (¶12) ("The fact that an injury
rarely occurs, or has never happened, is insufficient to protect the actor from a finding of
negligence."); *Spotlite*, 988 So. 2d at 369 (¶14). While the Defendants may not have
foreseen the manner of Marcus' death, a reasonable juror could determine that the
Defendants should have foreseen that an injury would require medication and that an adverse
reaction to that medication could occur. Accordingly, the trial court erred when it granted
summary judgment in favor of the Defendants.

## CONCLUSION

¶35. We reverse the trial court's order granting partial summary judgment in favor of the
Defendants. We remand for further proceedings consistent with this opinion.

¶36. **REVERSED AND REMANDED.**

18

**BARNES, C.J., GREENLEE, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. CARLTON AND WILSON, P.JJ., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**